FLEMING v. HULL ET AL.

1. **Certiorari:** WAIVER BY APPEAL: PRACTICE. Where *certiorari* proceedings were begun to review the action of township trustees, and afterwards an appeal was taken by the same party from said action, and the district court dismissed both cases on motion, on the ground that the statute under which the trustees acted was unconstitutional, and an appeal was taken from such ruling to this court, *held* that the point could not be raised for the first time in this court that the *certiorari* proceeding was abandoned by the taking of the appeal.

2. **Constitutional Law:** TAKING PRIVATE PROPERTY: DUE PROCESS OF LAW: JURY TRIAL. The action of the township trustees in assessing or refusing to assess damages caused to land by the construction of a tile or underground drain through it, under chap. 188, Laws of 1884, cannot be regarded as due process of law, unless the party whose land is taken has a right of appeal, through which he may have a trial by jury; and if § 1 of said act is to be construed as meaning that the land owner has no right of appeal in case no damages are assessed in his favor, then said section is unconstitutional, as depriving him of his property without due process of law.

3. ———: ———: DRAINAGE OF LANDS FOR PRIVATE BENEFIT. Chap. 188, Laws of 1884, is unconstitutional, because it permits one landowner, for his own personal benefit, and without any consideration of the public good, to construct a "tile or other underground drain" through the lands of another, thus taking private property for private use. [BECK, J., *dissenting*.]

Fleming v. Hull et al.

*Appeal from Mahaska District Court—*Hon. J. K. John-
son, Judge.

Tuesday, December 20.

The facts are stated in the opinion.

*Blanchard & Preston,* for appellants.

*John F. & W. R. Lacey* and *Bolton & McCoy,* for appellee.

Seevers, J.—Chapter 188, Acts Twentieth General
Assembly, provides " that whenever any person shall desire
to construct any tile or other underground drain through the
land of another, and he shall be unable to agree with the
owner or owners of such land as to the same, he may file
with the clerk of the township where said land is situated an
application therefor, giving a description of the land or lands
through which he may desire to construct the same." Fol-
lowing this are provisions requiring the clerk to notify the
township trustees, who are required to fix a time for hearing
the application, and notice of the hearing is required to be
served on the applicant and land-owner. It is then provided
that, at such time, " the trustees may fix the point or points
of entrance and exit or outlet of said tile or other under-
ground drain on said land, the general course of the same
through said land, the size and depth of the same, when the
same shall be constructed, how kept in repair, what connec-
tions may be made with the same, what compensation, if any,
shall be made therefor, or any other questions arising in the
construction of the same, and they shall reduce their finding
to writing, which shall be filed with the clerk of said town-
ship, who shall record it in full in his book of records of said
township; and said finding and decision shall be final, except
as to the amount of damages, if any such shall be awarded."
It is further provided that " either party may appeal to the
circuit court of said county from so much of said finding
and order as relates to the amount of damages:      *      *      *

provided, however, that said appeal shall not delay the construction of said tile or other underground drain, if the applicant shall, in case the land-owner appeals, deposit with the township clerk the amount of damages awarded by the trustees, and, in case the applicant appeals, that he shall first file the appeal-bond required by law."

Under this statute, William Varmest made the application therein contemplated, stating that he desired to construct two tile or underground drains through the lands of the plaintiff, describing them. The trustees fixed a day for the hearing, and the requisite notices were served, and they made and reduced to writing their finding, as required by the statute. The trustees found that "one of said ditches is necessary for the proper cultivation of said lands; that the permanent value will be increased thereby; and that it is necessary, in order to drain said lands and adjacent lands, that said tile ditches should pass through the lands of others than the applicant herein." The trustees also found and directed that the drain should be constructed over the land of the plaintiff, where the same should enter his premises, the depth and size of the drain, the length thereof, and that he would sustain no damages by reason thereof. Afterwards the plaintiff caused to be issued a *certiorari* directed to the defendants, who are the township trustees, and in their return thereto the foregoing facts appear. Afterwards the plaintiff appealed from the decision of the trustees to the proper court, so that both the appeal and the *certiorari* proceedings were pending at the same time. No motion was filed to dismiss either, nor was the pendency of one pleaded in abatement or in bar of the other. In both such proceedings a motion was filed by the plaintiff to dismiss the same, because the statute above referred to was unconstitutional, and therefore the proceedings from the beginning must be regarded as absolutely void. These motions were sustained, and the defendants appeal.

I. It is said that the appeal must be regarded as a waiver

or abandonment of the *certiorari* proceedings. For aught

**1. CERTIO-RARI: waiver by appeal: practice.** that appears, this question is presented for the first time in this court, and this cannot be done; but, conceding the point made to be well taken, the question as to the constitutionality of the law could be raised in the appeal in the manner it was in this case. (*Bankhead v. Brown*, 25 Iowa, 540.) Besides this, if the statute is unconstitutional, the whole proceeding is void, and no right whatever was or can be obtained thereunder, and the sooner this question is determined the better it will be for all parties.

II. No motion was made to dismiss the appeal; therefore, for all purposes of this case, it must be regarded as

**2. CONSTITU-TIONAL law: taking private property: due process of law: jury trial.** properly in the court below when the motion was determined. While this is true, it is exceedingly doubtful whether the right to appeal existed. It will be observed that the trustees found that the plaintiff was in no respect damaged by the construction of the drain over his premises, and the statute provides that the decision of the trustees shall be "final, except as to the amount of damages, if any, which shall be awarded." This contemplates that an appeal lies only in case damages are awarded. If this be the proper construction of the statute, it is in conflict with section 9, art. 1, Const., which provides that the "right of trial by jury shall remain inviolate, * * *" and "no person shall be deprived of life, liberty or property without due process of law." The assessment or non-assessment of damages by the trustees cannot be regarded as "due process of law," unless the right of appeal exists to a tribunal where such an assessment can be made by a constitutional jury. But as the main reliance of counsel for the appellee is based upon another provision of the constitution, it is perhaps better that our decision should be grounded on it.

III. It is agreed on all hands that private property, or

the use thereof, cannot be taken or appropriated for private purposes without the consent of the owner; but it may be taken without the consent of the owner for public purposes, if such owner is compensated therefor.    The contention of counsel is whether the statute contemplates or authorizes the construction of drains for a public purpose, or for the private use and benefit of the applicant.    Counsel for the appellant have called our attention to many adjudged cases, in which it is claimed that questions like that in the case at bar have been determined.    These cases have all been examined, and they consist of two classes. The first is where the erection of dams across streams of water are authorized by statute for the purpose of creating water-power to propel machinery in mills and manufactories; the effect of such dams being almost invariably to cause the water to flow back and submerge the lands of others.    Such statutes have been sustained on the ground of public necessity. They were first enacted prior to the discovery or utilization of steam, and there was no power other than that of animal or water that was known, or at least which in those days could be economically used, for the purpose of procuring food and clothing.    The establishment of mills and manufactories, therefore, was a public necessity, as well as a private benefit to the parties who constructed them, and so are railroads, which are now regarded as public necessities.    This being so, the power to invoke the right of eminent domain existed, and, if any person was damaged by the erection of such dams, who refused to accept a reasonable compensation for the damage suffered, he could properly be compelled to do so in case his damages were assessed by a jury.    But if such statutes were enacted now for the first time, it is possible, if not probable, that they could not be sustained.    (Cooley, Const. Lim., 664.)

The second class of cases to which counsel have called our attention is where swamp or overflowed lands have been drained by ditches, or otherwise reclaimed, and in so doing

*3.* ——— : ——— : drainage of lands for private benefit.

drains or ditches have been constructed, under the provisions of a statute, through the lands of others. These cases are not grounded on the right of eminent domain, but on the police power inherent in the state, which, broadly but not accurately (if this can be done) defined, is the power to do whatever may be regarded as being for the interest of all the people of the state. Such definition of the police power is sufficiently accurate for the purposes of the case. If lands are swamp, marsh or wet, disease may be engendered, the public health may require that they should be drained, if necessary, and such drain may be constructed through the lands of others. Such a statute has been in force in this state for several years. (Code, §§ 1217–1225 inclusive.) It may be further conceded, for the purposes of this case, that if land is swamp, marsh or wet, and the proper cultivation thereof so requires, it may be drained through the lands of others, provided compensation is made for the damages sustained. There are well-considered cases which hold that this may be constitutionally done when there are large tracts of such land, and possibly it is within the discretion of the legislature to determine the size or extent of the tracts that may be so drained, and that such determination is conclusive. We, however, have no occasion in this case to determine whether such a statute would be constitutional or not. This case is materially different from those we have been considering. It will be observed that the statute in question does not contemplate lands which are swamp or wet, but that any person who may *desire* to do so may, by pursuing the statutory mode, be authorized to construct a drain through the land of another. He is not required to establish that what he desires is reasonable or proper, or that his lands are swamp or wet, and in this case the applicant simply stated to the trustees that he desired to construct a drain through the plaintiff's land. It is true, the trustees are required to determine, it may be assumed, whether the drain shall be constructed, but it does not in terms so provide. Conceding,

however, that the drain cannot be constructed unless it is authorized by the trustees, if they do authorize it, their conclusion is a finality. The statute, therefore, provides that the trustees have the power to finally determine that one person may lawfully enter on the land of another, and dig up the soil, lay a drain, and perpetually maintain it, and, in this instance, cause the water passing through the drain to be discharged into a ditch on the plaintiff's land, which he must always maintain, for the reason that the trustees ordered that the plaintiff "shall not in any manner obstruct the free passage of water through said ditch or the outlet into which it opens." It would seem, therefore, that the plaintiff has been deprived of the right to use his property as he deems best, and that a burden is cast upon him without a trial by jury, to which he is entitled under the constitution.

But it may be said that the finding of the trustees is final and conclusive, and therefore the statute is constitutional, because the trustees have found that a ditch or drain is necessary and proper for the proper cultivation of such lands; that the permanent value will be increased thereby; and that it is necessary in order to drain said lands and adjacent lands. But it seems to us that the constitutionality of a statute does not depend upon the finding of the trustees in a particular case. If the statute is unconstitutional, it is void, and no valid act can be based thereon. But the trustees have not found that any of the lands are swamp or wet, and, as we understand, the primary thought in their finding is that the proper cultivation of the lands requires that the drain be constructed. The facts upon which their conclusion is based are not in the record. "It may be for the public benefit that all wild lands should be cultivated, all low lands drained, all unsightly places beautified, all dilapidated buildings replaced by new, because all these things tend to give an aspect of beauty, thrift and comfort to the country, and thereby to invite settlement, increase the value of the lands, and gratify

the public taste; but the common law has never sanctioned an appropriation of property based on these considerations alone, and some further element must therefore be involved before the appropriation can be sanctioned by our constitutions. The reason of the case, and the settled practice of free governments, must be our guides in determining what is or is not to be regarded a public use." (Cooley, Const. Lim., 660.) It is true that the statute does not contemplate a taking of property except for a drain; but this is immaterial, for it is nevertheless a taking, for one person's drain rests on the land of another. It is not our province to say whether the plaintiff has acted as a good neighbor should. This he has the right to determine for himself.

The foregoing views are in accord with and supported by *Bankhead v. Brown*, 25 Iowa, 540. For the reasons stated, we feel constrained to hold that the first section of chapter 188, Acts Twentieth General Assembly, is unconstitutional and void. AFFIRMED.

BECK, J., *dissenting.*—I. In my opinion, the statute referred to in the foregoing opinion, authorizing the construction of tile or other underground drains by a land-owner, for draining his own land through the land of his neighbor, is not in conflict with any constitutional limitation, but was enacted in the exercise of competent legislative power. It cannot be denied that land cannot be taken from the owner for strictly private purposes; that is, no one for his own private use can take the land of another. But I insist that the statute involved in this case authorizes nothing of the kind; that it does not provide that one man may *take* another's land for private use. How can it be said, when the land-owner remains in the uninterrupted possession of land, and enjoys fully all its profits, when his title is not impaired or assailed, and when no injury is done to the land, but it is rather improved and made more valuable for cultivation by the construction of a tile drain through it, that the

land is *taken* for any purpose, either public or private? In truth, the land is not *taken*. Every right and benefit which the law secures to the land-owner he retains to the fullest extent. He is burdened with no restriction upon his property rights. But one thing does the law forbid him to do, viz., to selfishly obstruct or destroy the drain constructed by his neighbor, which is below the surface of the ground, and is no detriment to the full and free use of the land for any purposes. The surface of the land may be disturbed, and the grass, if there be any, to some extent injured by digging a small ditch, two feet wide, more or less, which, after the tile is laid, is filled up. The statute provides for compensation for such injuries. But the possession of the land is not taken when the ditch is made, and the work occupies but a brief time, after which the land-owner finds it improved in productiveness and value.

II. The authority of the legislature to enact the statute in question is supported upon these considerations. The citizen holds all his own property, subject to the restriction that it shall not be used or so kept as to interfere with the fullest enjoyment by his neighbor of his property. He cannot compel his neighbor to maintain a marsh or incur great expense in draining it, when but a trifling outlay would be sufficient to construct a drain as provided by the statute in question. He is required to permit his own property to be occupied temporarily for the purpose of preventing loss to his neighbor. I need not refer to familiar instances wherein this doctrine is applied. It is the duty of all citizens to promote the general good of the people of the state, and it is the duty of the state to provide by law for the general welfare and prosperity. Public policy demands that the agricultural lands of the state shall be well farmed and drained, so that the utmost extent of their capability for the production of the fruits of the earth may be realized. The state, in the exercise of its police authority, may enforce

such demand of public policy for the public good. See Cooley, Const. Lim., 707, *et seq.*

III. A rule of the common law forbids the owners of property, real or personal, to so use or hold it that it works injury to another. The foregoing decision of the majority of the court supports unthrifty and unneighborly land-owners, who will not drain their own lands, nor permit their neighbors to drain theirs, on the selfish ground that their rights of property will thereby be involved. I am sorry that this court has invoked wholesome doctrines and correct constitutional restrictions, which, in my opinion, are not applicable to the case, to establish a rule which will operate harshly upon the agricultural interests of the state, by retarding the development of much of our best and most fertile lands, and will put it in the power of the selfish and unthrifty to throw insurmountable obstacles in the way of good farmers who desire to beautify and fertilize their farms by turning unsightly marshes or wet lands into productive fields.

IV. But, should it be held that the land is *taken* by the person constructing a tile drain, in that this manner of improving lands develops the agricultural resources of the state, the great source and the wealth of our people, upon which depends, in a very great measure, our prosperity, it is a public purpose for which private property may be appropriated. While but an individual in a single case may reap the benefits which come from the profits of the improvement of his land, the whole state is indirectly benefited thereby. And, in view of the fact that so many of our people and such large quantity of our lands may be beneficially affected by such improvements made by individuals, it becomes a public purpose, in the execution of which all the people of the state are interested and largely benefited. I am clear in the opinion that, if it may be said that the lands involved in this case were *taken*, it is for a public purpose, which authorizes the exercise, on the part of the state, of the right

of eminent domain. In support of these views see *Great Falls Manufacturing Co. v. Fernald*, 47 N. H., 444. Other cases could be cited to the like effect.

V. The statute in question authorizes the construction of " tile and other underground drains." The language of the act, and the universally familiar acquaintance of our people with the uses of " tile and underground drains," justify the conclusion that the purpose of the statute, enacted by law-makers familiar with this language and this purpose, is to authorize the drainage of *wet* lands. " Tile and other under-ground drains" are therefore not authorized by the law except the land be wet, and it is not to be presumed that the trustees in this case authorized the construction of the drain except upon finding that the land was wet, and for that reason the drain was required by the person invoking the action of the trustees. It would not only be absurd, but con-trary to presumptions which we are required to exercise, to argue that this person may have desired to put in the tile, and the trustees may have authorized it, when the land was not wet in fact. The presumption arises that the trustees did find and adjudicate that the land was wet, and that the claim for authority to construct the drain was authorized by the facts.

VI. If the trustees erroneously found that the land was wet, when in fact it was dry, and for that reason a drain was not authorized by the statute, the law provides a way for reviewing and correcting the erroneous decision. It may be that the trustees cannot acquire jurisdiction by finding con-trary to the facts; but it is not alleged or claimed in this case that plaintiff's land which he desired to drain is not wet.

VII. Wet lands not only retard cultivation, but are the certain source of malaria, the prolific parent of disease. This is a fact known to all men in all ages, which the law pre-sumes without proof, and of which the courts will take judi-cial notice as a matter of common knowledge which nobody

questions. It is not denied, but admitted, that the promotion of public health and the prevention of disease is a public purpose, authorizing the exercise of the right of eminent domain. Drainage tends to remove disease and attendant evils. It is therefore a public purpose, and the legislature, in enacting the statute in question, so regarded it, and authorized the construction of " tile and other underground drains," as a public purpose. It was not deemed requisite that in each case, when it should be proposed to construct tile drains in wet land, it should be determined that the public health would be promoted thereby. This is a fact settled by universal knowledge and admission, and is recognized by the legislature and the courts without a claim therefor or proof thereof. When a railroad company or a mill-owner is seeking to enforce the right of eminent domain, no allegation is required or proof demanded to the effect that these works are demanded by the public wants and necessities. So in the case of drains; it is taken by the legislature and by the courts as a conclusive presumption that their construction is demanded for the promotion of the public health, and that, therefore, the right of eminent domain may be exercised in taking land for their construction. The whole world knows that they are promotive of public health whenever they are demanded by the necessities of agriculture. This the legislature recognized in enacting the statute, and the courts cannot question it when called on to enforce the enactment.

In my opinion the foregoing decision is based upon the misapplication of familiar principles of the law, and the failure to recognize others equally familiar.