HIRAM ALDRICH v. D. D. PAINE, J. R. ROBSON, J. S. PRITCH-
ARD, H. PINKHAM, H. H. KINGBORN, Members of the
Board of Supervisors of Wright County, and A. A.
TAFT, County Auditor, Appellants, and ANNA MOR-
RISON, Intervener.

**Drains:** COUNTY BOARD:  *Towns and cities.*  Under Code, 1873, sec-
tion 1207, authorizing the board of supervisors of counties having
a population of five thousand inhabitants to construct "ditches or
drains * * * in such county whenever the same will be conducive
2 to the public health, convenience or welfare," the power of the
board is not territorially restricted to portions of a county outside
of the limits of incorporated towns, in as much as no such author-
ity has been conferred on such towns, and its exercise is not inim-
ical or repugnant to their powers.
ROBINSON and WATERMAN, JJ., dissenting.

**Appeal:** REVIEW FOR APPELLEE.  In a proceeding for the con-
struction of a ditch, appellees, in whose favor it was decided that
1 a majority of the resident owners have signed a petition for the
improvement, cannot question on appeal the correctness of the
special findings of fact in the decree filed on the same day as the
findings of fact in their favor, when no exception was reserved to
them.

*Appeal from Wright District Court.*—HON. D. R. HINDMAN,
Judge.

WEDNESDAY, OCTOBER 19, 1898.

A PETITION having been previously filed with the county
auditor, the board of supervisors of Wright county ordered
the construction of a ditch commencing in the northwest

quarter of southwest quarter of section 31, township 92, range 24 west of the fifth principal meridian, and running thence to a point on the west line of section 14, township 91, range 25,—a distance of six miles, and all within the limits of the incorporated town of Clarion, except that part in said section 14. The ditch was constructed in the manner provided by law; that part passing through the two blocks of the platted portion of the town, and as far as the Burlington, Cedar Rapids & Northern Railway, —a distance of eighty rods,—being a tile drain, with tiling two feet in diameter, securely covered. The total cost of eight thousand seven hundred and thirty-three dollars and three cents was apportioned and assessed against lands according to the benefits. A writ of *certiorari* was issued by the district court, and on hearing the petition was found to be signed by the requisite number of adjacent owners, but the board of supervisors was held to have acted without jurisdiction in ordering the construction of the ditch within the limits of the incorporated town of Clarion. The only difference between the petition of the plaintiff and that of intervention of Anna Morrison arises from the situation of their land,—that of Aldrich lying within and that of Morrison without the corporate limits. The defendants appeal—*Reversed.*

*McGrath, Peterson & Humphrey* and *Bottsford, Healy & Healy* for appellants.

*Nagle & Nagle* and *Ladd & Rogers* for appellees.

LADD, J.—I. The trial court found that a majority of the resident owners of land adjacent signed the petition setting forth the necessity, starting point, terminal, and route of the ditch. The record, which must be regarded as conclusive, shows this finding of fact to have been filed on the same day, and presumably at the same time, the decree was entered. It is doubtless true the appellees had no occasion to object to a judgment in their favor. This, however, did not relieve them from excepting to those special findings with which they were not content, and, having failed to do so, they will be deemed to have acquiesced in the con-

clusions reached. *Assurance Co. v. Neil,* 76 Iowa, 648; 8
Enc. Pl. & Prac. 275, and cases collected. As no exception
was saved, they cannot be heard to question the correctness of
the findings, and their appeal will be dismissed.

II. The question raised by the defendants' appeal is
whether the board of supervisors had authority to order the
construction of that portion of the ditch within the limits of
the incorporated town of Clarion. Section 1207 of the Code
of 1873 is as follows: "The board of supervisors of any
county having a population of five thousand inhabitants, as
shown by the last preceding census, may locate and cause to
be constructed levees, ditches or drains, or change the direc-
tion of any watercourse in such county, whenever the same
will be conducive to the public health, convenience or
welfare." This language is general, and the authority
of the board is not restricted in terms or by necessary
inference to territory outside of towns and cities. Nor is
there any such limitation in any of the sections of this chap-
ter, or amendments thereto, or of chapter 186 of the Acts
of the Twentieth General Assembly. The situation may some-
times be such that the ditch must pass through corporate lim-
its in order to carry off the water from lands drained to a
stream, and large areas of land requiring proper drainage
may lie within such limits. The authority apparently granted
to the board of supervisors must be held to extend to all parts
of the county, unless so repugnant to the powers granted to
cities and towns as to indicate a contrary legislative inten-
tion. The decision of this question involves a somewhat
detailed consideration of the drainage laws of this state, and
of those powers exercised by cities and towns said to be antag-
onistic to the construction and maintenance of ditches and
drains within their limits under the authority of the county.
Section 1208 of the Code of 1873 requires that a "petition
signed by a majority of persons, resident in the county, own-
ing land adjacent to such improvement shall be first filed in
the office of the county auditor, setting forth the necessity of

the same, the starting point, route and termini." In addition to this the basis of the proceeding may be a "petition of one hundred legal voters of the county setting forth that any body or district of land in said county, described by metes and bounds, or otherwise, is subject to overflow or too wet for cultivation; and that in the opinion of petitioners the public health, convenience, or welfare, will be promoted by draining or leveling the same." Acts Twentieth General Assembly, chapter 186, section 2. The satisfactory and economical construction of the ditch is assured by preliminary provisions requiring a survey and report with plat and profile, notice to the owners of the land to be affected, the filing of claims for damages, the hearing by the board of supervisors, and, if ordered, then the division of the ditch into sections, and the letting the work to the lowest bidder. Payment is made "out of the county treasury, from the fund to be collected for that purpose, on the order of the county auditor." Section 1214 is as follows: "There shall be made an equitable apportionment of the cost, expenses, costs of construction, fees, and compensation for property appropriated, or damages sustained by the construction of any such ditch, drain, change of direction of such water course or repairing and reopening the same   *   *   *   which apportionment shall accrue and be assessed among the owners of the land benefited by the location, construction or the reopening and repairing of such ditch, drain or water course, in proportion to the benefit to each of them, through, along the line, or in the vicinity of whose lands the same may be located, constructed or reopened or repaired respectively, and the same may be levied upon the land of the owners so benefited in said proportions, and collected in the same manner that other taxes are levied and collected for county purposes. And the amount so collected shall be paid out of the county treasury from the fund collected for that purpose on the order of the county auditor   *   *   *   and the diverting, obstructing, impeding or filling up of such drains, ditches or watercourses in any manner by any person without legal authority, is hereby

declared a nuisance, and any person convicted of such crime, shall be punished as provided in title 24, chapter 15 of the Code for the punishment of nuisances." And said supervisors shall, when necessary, cause said ditches, drains or watercourses to be reopened or repaired, and the costs thereof shall be apportioned, assessed, levied and collected as hereinbefore provided for the costs of the construction of such ditches or drains. It will be observed that any abuse of power by the board of supervisors is carefully guarded against by the requirement of petitions, and the opportunity of being heard afforded every owner of land to be affected; also that, although the necessity for the ditch lies in the public health, convenience, or welfare, those whose lands are beneficially affected must pay for the improvement.

No authority is conferred on incorporated towns to construct ditches or drains in the manner or for the purposes here contemplated. Section 480 of the Code of 1873 authorizes municipal corporations "to cause any lot of land within their limits on which water at any time becomes stagnant to be filled up or drained in such manner as may be directed by a resolution of the council or trustees." But this very evidently relates to water standing in depressions or pools, and not to large areas of low, wet, or swampy land which absorb the water, and on which it seldom stands, and never becomes stagnant. Besides, the authority of the council is limited to ordering such drainage only, or the lot to be so filled, as to obviate the nuisance occasioned by the standing of stagnant water. *Bush v. City of Dubuque,* 69 Iowa, 236.

Again, under section 18 of chapter 116 of the Acts of the Sixteenth General Assembly (now section 699 of the Code) the owner or lessee of land, who, by grading or filling it, obstructs the flow of water through a water course of any kind, may be required to construct a sufficient drain or passageway. This amounts to no more than the restoration of the natural course for surface or other water. Cities are authorized "to deepen, widen, cover, wall, alter or change the channel of water courses within their corporate limits," by section 3 of

chapter 89 of the Acts of the Nineteenth General Assembly, and, in addition to this, any city of the first class may "build and construct artificial channels, covered drains or sewers sufficient to carry the water theretofore flowing in any such water courses," divert it thereto, and fill up the old channel. Acts Twenty-third General Assembly, chapter 6, section 1. These enactments were long subsequent to the statutes giving authority to the board of supervisors, and, as they relate to cities only, do not aid in determining the point to be settled. They make clear, however, that the legislature was of the opinion the particular powers granted were not previously possessed by cities. The power to change any water course has never been conferred on the incorporated town, and does not exist, unless as possibly incidental to the care of the streets. See *Freburg v. City of Davenport,* 63 Iowa, 110; *Knostman v. City of Davenport,* 99 Iowa, 589; *Morris v. City of Council Bluffs,* 67 Iowa, 343. Our attention is called to the statute giving the town authority to grade and repair streets and alleys and to construct sewers, and requiring that it shall defray the expenses of the same out of the general funds of such city or town. Code of 1873, section 465. This refers to the building of sewers along the public streets and alleys for the purpose of carrying off the surface water and filth. The right to so construct sewers is usually regarded as incident to the power of maintaining the streets. *Cone v. City of Hartford,* 28 Conn., 363; *Leeds v. City of Richmond,* 102 Ind., 372 (1 N. E. Rep. 711); *Griswold v. Bay City,* 35 Mich., 452; *Stoudinger v. Newark,* 28 N. J. Eq., 187; *Codman v. Evans,* 5 Allen, 309; *In re Fowler,* 53 N. Y. 60; *City of St. Louis v. Oeters,* 36 Mo., 456. See 6 Am. & Eng. Enc. Law, 19. The word "sewer" does not seem to have a meaning essentially differing from "ditch" or "drain." Webster defines it as "a drain or passage to carry off water and filth underground; the subterraneous channels, particularly in cities." It has also been applied to an underground structure for conducting the water of a natural stream. *Bennett v. City of New Bedford,* 110 Mass., 433. In *Clay v. City*

*of Grand Rapids,* 60 Mich., 451 (27 N. W. Rep. 596), it is said: "Neither is sewerage necessarily, if it is generally, intended as the escape of filthy water. It includes all kinds of drainage or water discharge." The sewer is usually closed, but not necessarily so, and is ordinarily applied to drains in the city, whether of water or filth, or both. The difference seems to be largely a matter of location. What is a ditch or drain in the country is called a sewer in the city, and *vice versa.* But there is no provision for this construction of sewers through private property within incorporated towns, though the power to condemn for this purpose is conferred on cities. Acts Twenty-fourth General Assembly, chapter 8. That a ditch or drain cannot be so constructed without compensation has been recognized by this court. *Fleming v. Hull,* 73 Iowa, 598; *Hatch v. Pottawattamie County,* 43 Iowa, 442. Sewers or gutters along the street or highway would prove utterly inadequate to the drainage of large areas of land, and would involve much expense with little or no corresponding advantages to the incorporation aside from that to the general public. The main benefit is to the owner, and he, and not the public, should bear the burden. It is argued that these drains might be made in order to promote the public health. That this may be done in a locality controlled by the town may be conceded. *State v. City Council of Charleston,* 12 Rich. Law, 702. But permanent appropriation of land for its use for that purpose, without compensation, cannot be made, even though for the public good, and no general powers to condemn appertain to the duties of corporation officers. See *Bryant v. Robbins,* 70 Wis., 258 (35 N. W. Rep. 546); *Martin v. Tyler,* 4 N. D., 278 (60 N. W. Rep. 392). It must be borne in mind that municipal corporations have and can exercise such powers only as are expressly granted by their charters or legislative acts, or are necessarily implied therefrom, or are necessarily incidental thereto. *Brockman v. City of Creston,* 79 Iowa, 589; *Becker v. Waterworks,* 79 Iowa, 422; *Clark v. City of Des Moines,* 19 Iowa, 212; *McPherson v. Foster,* 43 Iowa, 57; *Keokuk v. Scroggs,* 39 Iowa, 447; *Clark v. City of Davenport,* 14 Iowa, 494.

It appearing, then, that the power is not conferred on the incorporated town, we may consider the objections urged against the possession thereof by the board of supervisors. The board may locate a highway along the ditch "in the same manner as on the report of a highway commissioner." Undoubtedly, its authority in this respect is limited to territory outside of the cities and towns. *Gallaher v. Head,* 72 Iowa, 173. In that case it was held that the general authority of the board of supervisors to establish highways was restricted to territory outside of cities and towns by section 464 of the Code of 1873, conferring on these the power to "lay off, widen, straighten, narrow, vacate, extend, and establish streets." This conclusion appears to be based on these grounds: (1) under the authority of the board the highway must be opened and worked by the highway supervisor, who is not authorized to do so within a town or city, and the land within the incorporation is taxed by it for such purposes; (2) cities and towns have control of certain purposes (such as abating nuisances, regulating travel, prohibiting the laying of tracks, etc.) of all territory within their limits; and, (3) the jurisdiction and liability of the county would cease with its establishment, and the burden of maintaining it be cast on the city or town, which might immediately vacate it. If this case is decisive, as asserted by appellees, it must be because of the reasons on which the decision is based, rather than the language of the statute; for here the same power is not conferred on the county and the incorporated town, and the jurisdiction is not concurrent. The situation is rather that of no power to act on the part of the incorporated town and plenary power on the part of the county. But the reasoning is not applicable. The town, as owner of the fee of the street, may, if the street is damaged by appropriation of its use in part for the construction of a drain or ditch, file its claim for damages under section 1210, which provides that "any person claiming compensation for land required for the purpose of constructing

any levee, ditch, drain or water-course * * * shall make his application in writing therefor to the county supervisors on or before the first day of the session at which the petition is set for hearing." From the determination of the board an appeal may be taken to the courts. The term "person," as here used, must be extended to bodies corporate. Section 45, subd. 13. If injury will be done the streets, or an additional burden of expense cast upon the corporation, we discover no reason why damages may not be claimed by it as well as by the individual owners through whose land the improvement extends. See *Railway Co. v. Starkweather,* 97 Iowa, 159. The objection that the responsibility of the county would end with the completion of the ditch is not well founded. It is given authority to reopen and repair. Section 1210; *Yeoman v. Riddle,* 84 Iowa, 147. Besides, it has been held that, though the county may construct bridges, or aid therein, the city may be held responsible for their care and control. *Bell v. Foutch,* 21 Iowa, 129; *Oskaloosa Steam Engine Works v. Pottawattamie County,* 72 Iowa, 135; *McCullom v. Blackhawk County,* 21 Iowa, 413; *Railway Co. v. Murphy,* 106 Iowa, *post.* See *Clark v. Town of Epworth,* 56 Iowa, 462. The contingency suggested, that the council, in its discretion, might conclude the ditch ought to be filled, and fill it, is guarded against by section 1214, declaring one so doing guilty of causing a nuisance, and punishable accordingly. The control of the corporation, like that of the owner of the land through which the ditch passes, must be consistent with its continuted existence and the purpose of its construction. The appellees assert that, if the supervisors have authority to construct a drain within corporate limits, an open ditch might be made through the populous portion of a city, and left in such a condition as to be a menace to health, and a dangerous obstruction to travel. The same objection can as well be made in behalf of a thickly-settled portion of an unincorporated town or village. It must not be forgotten that drainage is undertaken for the public good, and not for the private advantage or disadvantage of the owners of the land affected.

*Patterson v. Baumer,* 43 Iowa, 477. The cost of the improvement is paid by the assessment of benefits, and these would not be such in the settled portion of a town or city as to make possible the contingency supposed. Nor would it be possible to secure the petition required. Besides, the supervisors act for the people of the cities and towns as well as for those of others portions of the county, and in the discharge of their responsible duties will not work a great injury to these communities while attempting to promote their health, convenience, or welfare. Some discretion must always be lodged with officers authorized to act for the public in making improvements of this character, and the presumption in favor of their fidelity was vindicated in this case. The town of Clarion includes fourteen and one-half sections of land, much of which is wet and marshy. The ditch extending through the suburbs of the platted portion and in the streets was securely covered. The very possibilities suggested by the appellees were carefully guarded against. The character of the ditch is one of the matters to be considered at the hearing before the board of supervisors, and, if a covered ditch is necessary, it may well be presumed that it will be so constructed. It is urged, however, that if this were not done, or if the ditch should get out of repair, the city or town would be liable for any injury occasioned by its unsafe condition, owing to its ownership and control of the streets. If this be true, it is not inconsistent with any power granted, as the responsibility for the care of the streets remains unchanged, except that another burden is added. No injustice is involved because this may be taken into consideration in fixing compensation for damages. We think the objections urged by the appellees go to the possibilities of abuse of power, rather than want thereof, by the board of supervisors. These were doubtless given due weight by the legislature, and, as it saw fit not to confine the exercise of authority by the board to territory outside of cities and towns, we are not inclined to ingraft such a limitation. The necessity of ditches and drains within the limits of such municipalities will seldom arise, and

the board of supervisors, when called upon to order their construction, may well be intrusted to act with due regard for all the interests involved. We conclude that, as the authority to construct drains and ditches or change water courses, as possessed by the board of supervisors, has not been conferred on incorporated towns, and as its exercise is not inimical or repugnant to any of the powers granted to such corporations, it was not the purpose of the legislature to restrict such authority, by implication or otherwise, to that portion of the county outside of their limits. Judgment may be entered in this court dismissing the plaintiff's petition and that of the intervener.—*Reversed.*

ROBINSON, J. (dissenting).—The statute under which the proceedings in controversy were had was first enacted in the year 1872 (Acts Fourteenth General Assembly, chapter 220), and was incorporated in title 10 of the Code of 1873, which related to internal improvements. There is nothing in the language of the statute which indicates specifically that it was designed to apply to territory within incorporated cities and towns. It does not refer to them, nor does it contain any of the terms ordinarily used to designate real estate within such corporations, as, "lots." That fact, considered alone, would be of little, if any, importance in view of the general power given by the statute to boards of supervisors to cause to be constructed ditches and drains whenever it would "be conducive to the public health, convenience, or welfare." But the statute does not state that the board of supervisors may cause a ditch or drain to be constructed *wherever* it would be conducive to the public health, convenience, or welfare. A petition signed by persons owning "land" adjacent to the improvement is required, and the statute provides for the assessment of all "land" benefited by the ditch or drain, for the cost of constructing, repairing, or opening it. The terms "land" and "real estate," it is true, are interchangeable, and town lots are land; but it is true, as a general rule, when real estate in a city or town is intended to be included within the

purview of a legislative act of this state, that the terms "lots
and lands," or "lots and parcels of land," or similar designa-
tions, are most commonly used. Thus the general assembly
which first enacted the statute in question also enacted a
statute which referred to the platting of "any town lot or
parcel of ground within any incorporated city or town, or any
tract of land containing forty acres or less," which had been
divided for the purposes of sale, when the subdivisions could
not be accurately described without noting the metes and
bounds. Chapter 94, Acts Fourteenth General Assembly
(sections 478 and 479, Code of 1873), related to assessments
by municipal corporations for street improvements, and used
the terms "lots or lands," "lots or parcels of land," and "lot
or land," in designating real estate subject to such assessments.
The fact that these and similar terms are most commonly used
to designate real estate within cities and towns, although not
in any sense controlling, may properly be considered with
other relevant facts to ascertain the legislative intent in enact-
ing the statute in question. From a time before that was
enacted, incorporated cities and towns have had the power to
lay off, open, establish, and extend streets, alleys, and public
grounds (Code of 1873, section 464) ; to provide for the grad-
ing and repair of streets, avenues, and alleys, and the con-
struction of sewers (section 465) ; to construct sidewalks, and
to curb, pave, gravel, macadamize, and gutter any highway
or alley therein (section 466) ; to procure and control public
squares, streets, parks, commons, cemeteries, and hospital
grounds (section 470) ; to erect waterworks (section 471) ;
and, by a later statute, to establish and maintain gas works or
electric light plants (Acts Twenty-second General Assembly,
chapter 11). Such corporations also have power "to prevent
injury or annoyance from anything dangerous, offensive or
unhealthy, and to cause any nuisance to be abated" (Code of
1873, section 456), and to do many other things which need
not be enumerated. Section 920 of the Code of 1873 gave to
each board of supervisors "general supervision over the high-
ways in the county, with power to establish and change them,"
as provided by the Code. The language of the Code did not

limit the power of such boards to territory outside incorporated cities and towns, but was broad enough to include territory within them.    This court held, however, in *Gallaher v. Head,* 72 Iowa, 173, that the jurisdiction and power of such corporations over territory within their limits was exclusive for the purpose of establishing highways or streets on or through such territory.  · Section 969 of the Code of 1873, authorized township trustees to "divide their respective townships into such number of highway districts as they may deem necessary for the public good."    That provision was considered in *Clark v. Town of Epworth,* 56 Iowa, 462, and said to be broad enough to confer upon the trustees unrestricted control over the establishment of highway districts in their townships; but it was held, in effect, that such power would be inconsistent with that conferred upon cities and towns within the townships.  See, also, *Railway Co. v. Murphy,* 106 Iowa, *post.*  I am of the opinion that the rule of the cases cited is applicable in this case, and should be controlling.  The streets, alleys, and other public grounds of incorporated cities and towns, their sewers and drains, are usually established and improved according to well-defined plans, and grades duly fixed, with the design of perfecting a system of improvements which shall be efficient, and harmonious in all its parts.    But if boards of supervisors may invade such cities and towns, cut ditches therein, and construct drains, without reference to the powers of the municipalities invaded, or the system of improvements they have established, it is evident that serious conflict of authority may arise.  ·  The board of supervisors might conclude to establish an open ditch where the interests of the people of the city or town demanded a closed sewer,  or to so locate and construct the ditch as to greatly impair or destroy the sewerage system of the city or town, or injure its public parks or other grounds, or to require the construction of bridges where, under the plan of the municipality, none would have been required, or to interfere in numerous other ways with the proper exercise of municipal functions.    To say that the boards of supervisors act for the people of cities and towns as well as for other

people of their counties, and for the benefit of all, does not answer the objections suggested. Experience shows that it is not often, if ever, in the interest of the public, to vest in two separate and independent bodies concurrent but independent jurisdiction of the same subject-matter, and that, where it is done, unseemly conflict in the exercise of authority, greatly to the injury of the public, is apt to ensue. For that reason, as well as others, concurrent power is rarely vested by legislative acts in separate and independent bodies or agencies.

It is said, however, that incorporated cities and towns did not have power to drain such land as that in question, but only to drain water standing in depressions or pools. Even if that were true, it would not follow that the board of supervisors could have drained such lands by constructing ditches or drains within incorporated cities and towns. But, in my opinion, it is not true that such corporations lacked the power to drain wet land which was a menace to public health. They had power "to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated." Code of 1873, section 456. The manner in which the power thus conferred should be exercised was not pointed out, but of necessity it authorized the doing of whatever was reasonably necessary and lawful to accomplish the end authorized; and, if a ditch or drain were necessary to accomplish it, then the power to construct the ditch or drain was included in that given. The fact that the cost of such ditch or drain could not have been assessed upon the real property which was benefited by it, in the manner provided by the general drainage act, does not seem to me to be important to ascertain the power given. The purpose of the drain would not be to reclaim land for the purposes of cultivation, but to preserve the public health. I do not assent, however, to the conclusion of the majority that the land in question was not within the scope of section 480 of the Code of 1873. That provided that "municipal corporations shall have power to cause any lot or land within their limits on which water at any time becomes stagnant, to be filled up or drained in such manner as may be

directed by a resolution of the council or trustees," and to do the work required at the expense of the corporation in the first instance, in case the owner of the land neglected or refused to do the work.     But the cost of the work in such a case was a debt collectible of the landowner, and a lien upon the property drained was given.     The petition on which the board of supervisors ordered the construction of the ditch stated, in substance, that upon the land to be drained were "large collections of standing water,  *  *  *  endangering the public health, convenience, and welfare."     The report of the county surveyor shows that the land to be drained was low and swampy, "which, of an ordinary year, would contain stagnant water."     That this is true is not denied, but is affirmed by the appellants, who state in argument that "it clearly appears from the abstracts on file in this case that a large area of farm lands lying to the east, south, and southwest of the incorporated town of Clarion, in Wright county, to the extent of several miles, is low, wet, marshy, and covered with stagnant water in ordinary years; that these stagnant waters were a continual menace to the health of the inhabitants of the surrounding country;  *  *  *  that due regard for the public health, convenience, and welfare of the inhabitants of the surrounding country imperatively required the draining or ditching of these lands."     The location of the land is evidently thus fixed by reference to the platted portion of the town of Clarion. It is shown that nearly all of the land to be drained is within the territorial limits of the town, and it is admitted that in ordinary seasons water becomes stagnant on the land.     It thus appears beyond question that it is within both the letter and spirit of section 480, and that the town had ample authority to cause it to be drained.     It appears to me clear that it could not have been the legislative intent to give to the board of supervisors also the power to do the same.     That would be repugnant to the power expressly conferred upon the town, and contrary to the general policy which is followed in the enactment of statutes.     The probable fact that a large area of wet,

swampy land was included within the corporate limits of Clarion, which was not needed for dwelling houses or other ordinary purposes of a town, and which could, if drained, be used most profitably for agricultural purposes, and the fact that the cost of draining might be more equitably assessed and promptly collected under the statute in question, if applicable, than under the provisions of section 480, do not authorize the conclusion that the statute in question applies. It was within the legislative power to prescribe one method for draining land outside incorporated cities and towns, and another for draining lots and lands within their limits; and that appears to me to be what was done. If a mistake in that respect was made by the general assembly, it may give the remedy. For reasons indicated I am of the opinion that sections 1207 to 1216, inclusive, of the Code of 1873, did not authorize boards of supervisors to construct ditches or drains within municipal corporations. The fact that the ditch in question may have been for the public benefit, and that it was so constructed as not to injure property owners, did not authorize the assessments in controversy. If the board lacked the power to construct the ditch, it could not make the property affected liable for its cost. The opinion of the majority discusses various matters which do not appear to me to be involved in a determination of this case, and I do not express any opinion in regard to them, but on grounds set out I think the judgment of the district court should be AFFIRMED.

WATERMAN, J., concurs in this dissent.