JUDSON HALL, Appellee, v. E. E. YOUNG, Appellant, et al., Appellee (and one other case).

PARTNERSHIP: Evidence. Evidence reviewed, and held to present jury question on the issue of the existence of a partnership in operating a garage.

EVIDENCE: Owner Presumed to Control His Property. An owner of property is presumed to be in control of his own property; therefore, a showing of ownership casts upon the owner the duty to show that the use of his property, on the occasion in question, was *without his consent.* So held in the operation of an automobile.

NEGLIGENCE: Imputed Negligence—Act of Unauthorized Person. The owner of an automobile is not liable for the negligent acts of another in operating the car without the owner's knowledge or consent.

PARTNERSHIP: Negligent Acts Outside Scope of Partnership. A partner in the ownership and operation of an automobile is not liable for the negligence of another partner in using the car for a purpose wholly outside the scope of the partnership.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

MAY 22, 1920.

REHEARING DENIED JULY 6, 1920.

ACTION by the plaintiff in each suit against defendants for damages. The causes were tried together, and resulted in separate verdicts, and judgment in favor of each of the plaintiffs. The defendants appeal.—*Reversed.*

*E. A. Fordyce* and *H. S. Johnson,* for appellants.

*Hughes, Sutherland & O'Brien* and *C. L. Taylor,* for appellees.

LADD, J.—At about 30 minutes after noon of September 12, 1914, Judson Hall, 11 years old, and his brother, 5 years of age, with their little wagon, loaded with groceries, were waiting between the curb and street car track for the car to pass. As it swung around a curve to Third Avenue, a two-seated automobile, moving at a high rate of speed, struck them, throwing one against and the other under the car. Each was seriously injured, and, by his next friend, brought action against defendant Thomas Young, who was operating the automobile, and E. E. Young, who was not present. In an amendment to his answer, Thomas Young admitted that he was operating the automobile; that negligence in so doing caused the injuries; and that he alone is liable therefor. His father, E. E. Young, interposed a general denial, and he only appeals. The two actions were tried together, and separate verdicts returned. Our inquiry is limited to ascertaining whether error was committed against E. E. Young. To sustain the finding of the jury, the evidence must have been such as to have warranted the conclusion that the father was legally re-

1. PARTNER-
SHIP : evi-
dence.

sponsible for what his son did. *Wagner v. Kloster,* 188 Iowa 174. That body was told, in the fifth instruction, that:

"Before he can be held liable to plaintiffs for any damage caused through the negligence of Thomas Young in operating the automobile in question, the plaintiff must prove, by a preponderance of the evidence,—that is, by the greater weight or value of the evidence,—that, at the time the plaintiffs were injured, Thomas Young was the agent, servant, or employee of E. E. Young, and was employed in or about the business of E. E. Young, and in the operation and management of said automobile, or that both of the defendants owned the automobile in question together, and both were interested as partners, or were otherwise engaged in a joint enterprise or common purpose, and were using the automobile in connection therewith when the plaintiffs were injured. If the plaintiffs have so established either of said propositions, then both defendants would be liable for the damages caused by the negligent operation of the said car, and you should so find. But if neither of said propositions has been established, then the defendant E. E. Young would not be liable in this action."

The exceptions to this instruction, interposed by appellant, were that the evidence was not sufficient to carry the issues to the jury, because it is therein assumed against this defendant that damages were caused by the negligent operation of the car, and that it tended to lead the jury to think Thomas' admission of negligence was binding on his codefendant. The last exceptions are without foundation; for, in the previous paragraph of the charge, the jury was fully and correctly instructed on this subject. Appellant argues that the instruction is erroneous in permitting recovery upon the finding of agency or partnership, without exacting a further finding that Thomas was engaged within the scope of the agency or partnership. This point was not raised by the exception to the instruction, and may not be considered. *Anthony v. O'Brien,* 188 Iowa 802. There was evidence tending to show partnership, or, at least, that

father and son were together interested in the automobile business. One Newman testified to being proprietor of a garage; that, at the instance of the police, he took the automobile to his garage; that a demonstration number in the name "E. E. Young & Son" was attached thereto; that E. E. Young called, a few days later, and, in the course of a conversation, remarked that he did not understand why they arrested Thomas, as he never had a cent, and they could not get anything out of him; that to this the witness responded that he had an automobile, and appellant said, "No," the automobile belonged to him; that appellant paid the charges on the car, and, upon the suggestion that the witness repair the car, declared that he and his son operated a garage at Palo, and that he would repair it in his own garage. The witness swore that they conducted business under the name of Young & Son. Lightner, a justice of the peace, related that appellant left a memorandum at his office that they were conducting a garage at Palo; that Thomas was not worth anything, but had a large family; that, if he didn't get to work at some trade, he would put him on a farm. On the other hand, appellant swore that, in 1914, he was selling the King car in his garage at Palo; that Thomas lived in a rented house in Palo that year; that he told Thomas he could go in and have full access to the blacksmith shop in the garage and make what he could; that "that was his own business, he [Thomas] was not having anything to, do with the garage at all;" that they were not interested in the business of each other; that the witness had two cars; that he was not engaged in trading cars, but Thomas traded and sold cars when he wanted to; that the automobile in question was an "E. M. F.," which Thomas had obtained from one Stark, by paying $37.50 difference between that and another car, and that the witness had no interest in it; that each carried a key to the garage; that Thomas had not driven either of the witness' automobiles during the year; that the demonstration number was taken out in December preceding the accident, but he did not know it was in the name of E. E. Young

& Son, and such a firm did not use it; that it was so taken out so that either one might use it; that, when having nothing to do, Thomas assisted about the office, but was not concerned with the sale of the King cars, which witness handled; that, since the middle of August preceding the accident, Thomas had been working on a 5-acre tract, being a part of witness' farm of 240 acres, four miles out of Palo: that he had built a kitchen to a small house there, moved an old shop over there, and fitted it up for a blacksmith shop, and trimmed the trees; that Thomas bought and paid for the lumber which went into the kitchen, and paid the cost of moving the shop; that all this' happened before the accident; that witness sold the automobile Thomas had driven, reimbursed himself for what he had paid in fines and costs for his son out of the proceeds, and gave the balance to his son, in pursuance of an agreement so to do, had between them. Thomas' testimony was, in substance, like that of his father, and he adduced checks tending to confirm that he had purchased the automobile traded for the "E.M.F.," and had paid the difference between these, when obtaining the latter; that he got the car for his own use and that of the family; that he went to Cedar Rapids to get a personal check cashed; that his father did not know he was going; that the moving of the shop was then done; that he went to get a valve for the pump, but could get none, and then got the beer to treat the men who had done the moving; then got dinner, and started for home; that he leased the land from his father at $25 per year, and owned the improvements he put on the place. A brother of the last witness swore that appellant was not present when Thomas traded for the "E.M.F.," and Hepker, that appellant had nothing to do with moving the old shop, and that witness had charge thereof, and Thomas paid him therefor. Iser testified to doing the carpenter work on the kitchen, and that Thomas paid him therefor after the accident; that appellant gave no attention to what was being done. Hayes swore that the lumber for the kitchen was bought August

18, 1914, and that Thomas gave his note therefor, and after-wards paid it.

2. EVIDENCE: owner pre-sumed to control his property.

Such was the evidence, and we are of opinion that it was enough to carry the is-sue as to whether the father and son were in partnership or carrying on the business of operating the garage together, to the jury. They made use of a demonstration number under the name of E. E. Young & Son, precisely as though a partnership. Both worked in the same shop, in a manner likely, if partners. The father took charge of the car as his own, shortly after the accident, and declared, as was testified, that it belonged to him, and that they were conducting a garage together. Of course, all this was put in issue. The only benefit ap-pellant derived from the improvements put on the five acres was that they might revert to him when Thomas gave up the lease. The latter was not restricted or controlled in the improvements made, save that he was required to pay all the expenses thereon. If, as appears, Thomas was to pay the rent, "part in work and part in cash," such part was not in improving the leased premises in any way. That Thomas, long after the accident, worked some for the ap-pellant, does not warrant the conclusion that he was operat-ing the car for appellant at the time in question, or that appellant had anything to do therewith. But the jury might have believed Newman and others, and rejected the testimony of defendant relating to these matters, and have concluded that they were partners, or, at least, that they were carrying on the business of the garage together. So, too, as against defendant, the jury might have found that he was owner of the car. If they so concluded, then the prima-facie case was made out that he was in control thereof, and that Thomas was operating the car for him. *Landry v. Overson*, 187 Iowa 284. This, as was said in that case, is a mere inference that an owner probably is in con-trol of his own property, and is to be given no greater weight than required to compel the owner to identify those operat-

ing the vehicle, and explain by what authority, if not his own, it is being run.

3. NEGLIGENCE: imputed negligence: act of unauthorized person.

Aside from this presumption, there was nothing to indicate that Thomas, in operating the car, was acting in behalf of the appellant. On the contrary, appellant testified that he did not know that Thomas was using the car, or that he had gone with it to Cedar Rapids, and swore that he had nothing to do with his going; and Thomas swore that he went to Cedar Rapids to get a check cashed, belonging to himself, and to obtain a valve for the pump on the land he had leased, and that his father had nothing to do with him or the automobile, in the trip that he had made. This evidence is uncontradicted, and precludes any finding that Thomas was acting as agent, servant, or employee of the appellant. *Kauffman v. Logan,* 187 Iowa 670. Nor was there any evidence that, at the time of the collision, defendants were engaged in a joint undertaking or common enterprise, other than operating a garage at Palo, or were using the automobile in connection therewith. That Thomas leased the five acres of land, was improving it at his own expense, save that his father had allowed him to move the old building belonging to him onto the five acres for a blacksmith shop, was undisputed, as was the testimony of Thomas that he had gone to Cedar Rapids for the purpose indicated. Surely, the appellant had no concern in procuring the check to be cashed, nor in obtaining the keg of beer. Thomas was to do all the repairing on the five acres; and, though obtaining the valve might benefit him incidentally in the future, he was not required to procure the same, and it was wholly in Thomas' interest that he

4. PARTNERSHIP: negligent acts outside scope of partnership.

undertook to obtain it. Manifestly, the appellant was not interested in or concerned with what Thomas went to Cedar Rapids to do, and, as he was not in the employment of appellant, the latter might not be found liable as principal. How can it be said that what Thomas did had any connection with the business of the garage, or with any-

thing in which appellant and his son were together engaged? Appellant was shown to have been without knowledge that Thomas was going or had gone to Cedar Rapids, until he learned of the collision. The most that could be said was that appellant was owner or partner in the ownership of the car. If he was owner, he was not liable, for that it must have been found that Thomas was not acting as his agent, and had the car without his consent, and was employing it in his private business. If it was owned by both, as partners or otherwise, the record is conclusive that it was not being operated within the scope of the partnership business or in any common enterprise. There is no escape from the conclusion that Thomas was transacting his private business, and not undertaking to execute some purpose or transacting some business of the partnership, if any there was, or of a common enterprise. Even though partnership property were employed, this was not employed within the scope of a partnership business. Of course, one partner is the agent of the other; and if, in the course of the partnership business, one partner commits a tort, the other may be held in damages therefor; but, if this is done, even in the use of partnership property, without the scope of such business, there can be no recovery against the same. 1 Cooley on Torts 253. Had Thomas been engaged in the transaction of partnership business, appellant would have been liable; for each partner is the agent of the partnership, in the transaction of its business. Upon a careful examination of the record, we find that the evidence was insufficient to carry the issues, as against appellant, to the jury; and on that ground, the judgment is—*Reversed*.

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.