TIGUE SALES COMPANY, Appellee, v. RELIANCE MOTOR COMPANY et al., Appellants.

568

OCTOBER 16, 1928.

REHEARING DENIED JANUARY 23, 1929.

*J. O. Boyd*, for appellant.

*E. W. McManus*, for appellee.

DE GRAFF, J.—The pleaded liability in this case finds its basis in Section 5026, Code of 1924, which makes the owner of a motor vehicle liable for damages to a third person when said

 damages result from the negligent operation of the motor vehicle by any person in possession thereof and operating the same with the owner's consent. This statute is comprehensive and unequivocal in its terms, and quite clear in its meaning and intent.

In the instant case, it is conclusively shown that one Gean Swearingen was in the possession of and operating a certain automobile (Hupmobile) licensed in the name of the Reliance Motor Company, and that, on March 27, 1927, he collided, on a certain highway in Lee County, Iowa, with another automobile (Essex), owned by the Tigue Sales Company (appellee), and driven by Thomas V. Tigue, a partner in the said sales company. The petition recites four specifications of negligence on the part of Swearingen in the operation of the car, and further alleges that the car driven by him was the property of the defendant Reliance Motor Company, and was being used and operated by Swearingen with the consent of the Reliance Motor Company and with its knowledge.

The defendant motor company, in answer, denied that the Hupmobile driven by Swearingen was the property of the Reliance Motor Company, and denied that the motor company had any right to give or withhold its consent to the operation of said car by the said Swearingen, as the said car was the property of the said Swearingen. The answer further alleges that the said Swearingen, on March 25, 1927, purchased the said auto from the Reliance Motor Company, and as part payment therefor, gave a chattel mortgage to the said motor company in the sum of $333.24, which was duly recorded and indexed, and that the defendant had no further interest in said automobile.

The plaintiff, on the date the case was called for trial, to wit, May 18, 1927, moved the court to dismiss the case against the defendant Swearingen without prejudice. This was done, and the cause proceeded to trial as to the Reliance Motor Company.

At this point, it may be said that we are not concerned with the negligence of the defendant Swearingen, as pleaded in the filed petition. The pleaded negligence is neither denied in the answer nor in the evidence, but it is practically conceded that the damages sustained by appellee find the proximate cause in

the negligence of Swearingen. In brief, the appellant rests its defense on the theory that the car in question was not owned by it, and that Swearingen was not driving the car with the consent of the appellant at the time of the collision. The primary issue, therefore, involves the ownership of the automobile at said time.

The facts disclose that, prior to March 25, 1927, Swearingen was the owner of a Durant car, and that on said date he entered into negotiations with the Reliance Motor Company for the purpose of buying the Hupmobile or trading his Durant for it. On that date, as a result of his conversation with the appellant motor company, he signed a "car order," which authorized the motor company to enter his order for a Hupmobile touring car, as per specifications given, for which he agreed to pay the sum of $465. This order recites the purchase price, $465, and also recites credit by notes and mortgage, $275, and for the Durant car, $190. This order further recites as follows:

"This contract expresses the entire agreement between the parties; all previous verbal or written communications between the parties with reference to the subject-matter hereof are hereby abrogated."

The Durant car was, on that day, left by Swearingen in the possession of the Reliance Motor Company, and on said date, he took possession of the Hupmobile. Upon the trial of this cause, as a witness for the plaintiff, Swearingen testified, without objection, that the Hupmobile belonged to the Reliance Motor Company, and that he was driving it with the consent and permission of said motor company. He further testified:

"I got it from them on the 25th day of March, and I was given permission to drive it until the 29th of March. I left my Durant with the Reliance Motor Company until the 29th, to see whether those papers [mortgage and notes] went through all right or not. And on the 29th, I went back and asked for my car, and they said I couldn't have it. Q. Did they [motor company] give you any instructions with reference to driving it? A. No, sir, only just to try it out until the 29th. Q. What sort of a trade were you and Cox [Reliance Motor Company] going to make on these cars? A. Well, I was going to send the papers and see if the Universal Finance Company would want them,

and if they did, we would [trade], and if they didn't, we wouldn't [trade]."

The testimony of Swearingen is to the effect that, if the papers (mortgage and notes) went through,—that is, were accepted by the finance company,—the deal with the motor company would be closed; but in the meantime, he should use the Hupmobile, and the deal was to be consummated on the 29th. The accident giving rise to the damages in question occurred "in the meantime," to wit, March 27th.

Mr. Cox, as representative of the Reliance Motor Company, flatly denies the arrangement as related by Swearingen, and consequently the dispute in this case involving the ultimate issue is between the witness Cox and the witness Swearingen. The jury believed Swearingen.

The record further shows that Swearingen never appeared in person before the notary public in relation to this transaction, and that the papers in question were never sent by the appellant to the Universal Finance Company. It also discloses that the Reliance Motor Company, by C. C. Cox, representative, signed a paper bearing date March 29, 1927, which should have been dated March 25, 1927, that the company "this day delivered to Gean Swearingen, Keokuk, Iowa, a motor vehicle described as follows: Hupmobile," etc. Neither seller nor purchaser took any steps to change the registration of the car in question after it was "delivered" to Swearingen. The foregoing are the primary facts upon which the trial court based its instructions.

In addition to certain requested instructions asked by the defendant motor company, the defendant also requested, in writing, certain interrogatories which the court, in the main, submitted to the jury for answer. The first interrogatory and answer read as follows:

"Was Gean Swearingen the owner of the Hupmobile he received from the Reliance Motor Company on March 27, 1927 [date of collision]? A. No."

Other interrogatories involved the question whether the motor company had any control or supervision over Swearingen as to the use of the Hupmobile on March 27th, and whether the motor company had any control over the direction of the use of

said car in the possession of Gean Swearingen on said date. To these questions the jury returned a negative answer.

No exceptions were taken or preserved to the special findings of the jury. Furthermore, a special finding requested by appellant upon any stated proposition of fact implies a concession by him that there is evidence to justify the submission of such a question; and if the result of the special finding is contrary to the wishes of him who requested it, he will not be permitted to change front and insist there is no evidence to sustain it. See *Hanley v. Fidelity & Cas. Co.*, 180 Iowa 805; *Aldrich v. Paine*, 106 Iowa 461. The instant appellant, therefore, is not in a position to question the special findings made by the jury in this case.

Counsel for appellant strenuously challenge the instructions given by the trial court, especially with reference to the application of Code Sections 4964 and 5026. The trial court did, in an instruction, give, in substance, the provisions of the law governing the transfer of ownership of any registered motor vehicle, and, among other things, stated the statutory provision that, until said transferee has received said certificate of registration and has written his name upon the face thereof, "for the purpose of this chapter, delivery and title to said motor vehicle shall be deemed not to have been made and passed." It is sufficient to say that the court instructed, in the light of this statute, that the fact of non-registration could be viewed as one of the incidents or circumstances to be considered by the jury in determining the ownership of the Hupmobile.

Chapter 275, Acts of the Thirty-eighth General Assembly, says nothing about regulating the sale or transfer of title to personal property, nor did it purport to invade the provisions of the Uniform Sales Act, enacted by the same legislature (Chapter 396, Acts of the Thirty-eighth General Assembly). Chapter 159, Acts of the Thirty-ninth General Assembly, to avoid a possible misconstruction of the prior act, added the words, "for the purpose of this chapter," which purpose was the licensing and regulating of motor vehicles. As pointed out in *Cerex Co. v. Peterson*, 203 Iowa 355, the restriction on the passing of title not only had no reference to the rights of buyer and seller as between themselves, but such rights were expressly excluded by the

amendment. This limitation was carried into the present law. Section 4964, Code of 1924.

Respecting Section 5026, Code of 1924, it may be said that a new relationship between an owner and the driver of an automobile was created. This statute fixes the liability of an owner for the negligence of a person driving the car with his consent. *Seleine v. Wisner*, 200 Iowa 1389. By this statute the doctrine of *respondeat superior* has been given a broader scope; and under this statute, it was not necessary that the instant plaintiff establish the fact that the driver Swearingen was in the employ of the defendant, or was its agent, or in the transaction of its business. It was essential to establish, by a preponderance of the evidence, that the Hupmobile was operated in a negligent manner, as alleged, and that the damage sustained by the plaintiff was the direct and proximate result of such negligence. The trial court so instructed. It was also essential that the plaintiff establish, by a preponderance of the evidence, that the Reliance Motor Company was the owner of the Hupmobile which caused the damage, and that the motor company had given its consent, at the time in question, for it to be operated by the driver Swearingen.

The statute (Section 5026) cannot be so construed as to relieve the owner from liability for damages caused by the negligent operation of a motor vehicle by another having possession thereof and operating same with his consent. *Robinson v. Bruce Rent-A-Ford Co.*, 205 Iowa 261.

The question of ownership and consent, under the facts in the instant case, was clearly for the jury to determine. Had there been any evidence that the consent or permission given Swearingen was in any way limited, the cases relied upon by appellant might find application. See *Reynolds v. Buck*, 127 Iowa 601; *Hall v. Young*, 189 Iowa 236; *Rowland v. Spalti*, 196 Iowa 208; *Curry v. Bickley*, 196 Iowa 827; *Mooney v. Canier*, 198 Iowa 251; *Maine v. Maine & Sons Co.*, 198 Iowa 1278; *Halfpap v. Gruis*, 199 Iowa 757.

On the whole record, we discover no reversible error, and the judgment entered by the trial court is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.