G. W. SHIDELER, Appellant, v. MARTIN NAUGHTON, ET AL., Appellees.

Intoxicating liquors: NUISANCE: INJUNCTION: EVIDENCE: BURDEN
1 OF PROOF. The finding of several cases of beer and empty beer bottles in connection with evidence of the general reputation of the place as one where intoxicating liquors were illegally sold, when undenied, is sufficient to make a *prima facie* case of nuisance and to authorize an injunction; and upon a showing of such facts the burden devolved upon defendant to rebut the unfavorable presumption thus created. Evidence held sufficient to show that defendant was maintaining a nuisance.

Same: FAILURE OF DEFENDANT TO TESTIFY: PRESUMPTION. The statute
2 forbidding indulgence in any unfavorable presumption, arising from the failure of defendant to testify in his own behalf, has no application to a civil action to restrain a liquor nuisance.

*Appeal from Woodbury District Court.*—HON. WM. HUTCH-
INSON, Judge.

THURSDAY, FEBRUARY 12, 1914.

ACTION to enjoin the illegal sale of intoxicating liquors
upon premises used and occupied by the defendant Naughton.
Petition dismissed, and plaintiff appeals.—*Reversed.*

*John F. Joseph,* for appellant.

*Wilbur Owen,* for appellee.

WEAVER, J.—The evidence shows without material con-
troversy that the place in question was being occupied by
Naughton as a combination residence, barber shop and pool
hall. It was also furnished with counter, drinking glasses and
ice box. He sold drinks which are spoken of as "soft," by
which we may assume is meant nonintoxicating beverages. It
had the reputation in the neighborhood of being a "blind
pig," or place where intoxicating liquors were clandestinely
sold. A raid was made upon the premises by the officers of
the law, who found some "fifteen or sixteen bottles of beer
in the ice box" and other bottles of beer sufficient to make
four full cases. There were also quantities of empty bottles
and flasks in barrels and other places about the premises. On
another occasion, two bottles of beer and nearly a quart of
whisky were found in a gunny sack in the kitchen. At the
time of the raid, the officers saw two men drinking beer in a
closet, but did not see where they procured it. In one of the
rooms there were a table, a bottle of whisky, drinking glasses,
and empty bottles. One of the officers says a man was drink-
ing in the pool room down stairs, though on cross-examination
it would seem that he had reference to the ·men drinking
beer in the closet. One witness swears that on two occasions
he gave another person money to get whisky for him, and

that such person took the money, went into defendant's place of business, and returned with the whisky. This statement is denied by the person who is named by the witness as having procured the liquor. On the part of the defense Naughton did not take the stand as a witness or offer any explanation of the circumstances to which we have referred. One Knoll was called for the defense, and said that at the time in question he was bartender in a saloon in that vicinity, and on "the night of the raid" he sold four cases of beer to four persons named by him as Keefe, Kelly, Kennedy, and Cook. These persons, he says, "were going fishing and left the beer with Cook to take next door—into Naughton's place, I suppose, or Brodsky's place." Kennedy testified to the proposed fishing trip, to the purchase by each of the party of a case of beer and says: "We left it with Cook to have the beer put away so we would get it next morning early." But strangely enough Cook does not appear as a witness, and no person who has any personal knowledge as to the fact identifies the liquors found at Naughton's place as the same liquors sold by Knoll to the thirsty fishermen. It is said by some of the witnesses that upon a hearing before a magistrate the persons who bought beer from Knoll appeared and laid claim to the goods, and that the magistrate sustained their claim, but no adjudication is pleaded, and the magistrate's record is not in evidence. Whether such adjudication, if one was had, would avail as a defense in this proceeding is a question not presented by the appeal, and we do not undertake to pass upon it.

The trial court expressed the view that at most the testimony gave ground for suspicion of illegal sales, but that it offered no substantial ground for an injunction. We find ourselves forced to the opposite conclusion. One

1. INTOXICATING LIQUORS: nuisance: injunction: evidence: burden of proof.

who attempts to carry on an illegal traffic in liquors does not often do it openly. Like many other offenses against the law, it is one of secrecy, and the business is sought to be concealed by vari-

ous subterfuges. It is rarely the case that it can be proved by clear, direct testimony, and the state and the private prosecutor are compelled to rely largely upon circumstantial proof. It is in recognition of this fact, no doubt, that the statute permits evidence of the general reputation of the place of business to be heard in such cases. Code, section 2406. To the same purpose is the statute which makes the finding of intoxicating liquors in the possession of one not legally authorized to sell presumptive evidence of a violation of the law. Code, section 2431. Now, proof of the finding of at least four cases of beer on the premises, to say nothing of the numerous other indications pointing to the same conclusion, made a presumptive or *prima facie* case for an injunction, and, in the absence of other evidence, would require the granting of the relief demanded. So we think it cannot be said that plaintiff's case rests upon mere suspicion. On the contrary, it rests, *prima facie* at least, upon an undisputed fact which is of itself sufficient to sustain an injunction decree. *State v. Severson,* 88 Iowa, 714; *State v. Fleming,* 86 Iowa, 294; *State v. Farley,* 87 Iowa, 22.

The fact being shown, the burden was upon defendant to rebut the unfavorable presumption so created. *State v. Intox. Liquors,* 109 Iowa, 145.

This we are very clear has not been done. The story of the fishermen may be entirely true so far as it appears in the record, and yet it so lacks connection with the case as to be of little value. As already suggested, no witness testifies to the identity of the beer so purchased with the beer found in defendant's place of business. The two men who alone could have made this plain, Cook, one of the purchasers, and Naughton, have not testified; a reticence on the part of the defense which is of material significance.

The several parts of the story, as developed by other witnesses, show circumstances which tend to discredit the defense. In the first place, Knoll's statement is that he sold the beer to Kelly and others "on the night of the raid," but

does not indicate the time except by implication that it was some time before the hour of closing, 10 o'clock, while the raid was made at 9 o'clock of the same evening. Moreover, the claim that these cases of beer had just been brought in there by third parties for storage over night to be removed early next morning is hardly consistent with the fact that the cases found by the officers were empty in part, the vacant spaces being filled by them from the "fifteen or sixteen bottles" taken from the ice box. Taking the case as a whole, it seems scarcely open to reasonable doubt that the liquor was being kept there for sale in violation of the law.

It should be said in this connection that the statute which, in a criminal case, forbids indulgence in any unfavorable presumption from the failure of the defendant to testify in his own behalf has no applica-

2. SAME: failure of defendant to testify: presumption.

tion in a civil action. This is a civil action, and, except as modified by statute, all the established rules of evidence are applicable thereto.

For the reasons above suggested, the order dismissing the case is reversed, and there will be a decree of injunction as prayed, with costs of the lower court and of this court taxed to defendants, including an attorney's fee of $50 to cover services of counsel in both courts. The case will be remanded for entry of decree in harmony with this opinion.—*Reversed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.