WILLIAM McKEE, Appellee, v. IOWA RAILWAY & LIGHT COM-
PANY, Appellant.

TRIAL: Instructions—Nonpresented Theory—Waiver. Correct instruc-
1   tions relative to the duty of the defendant to guard an excavation
    made by him are all-sufficient, in the absence of a request by de-
    fendant that there be presented to the jury his claim that he had
    properly covered the excavation and that someone had, without his
    knowledge, wrongfully removed such covering.

TRIAL: Reception of Evidence—Curing Error. Error in the reception
2   of incompetent testimony relative to the physical condition of an
    injured party is ordinarily nullified by striking the testimony and
    specifically admonishing the jury to disregard such stricken testi-
    mony.

NEW TRIAL: Verdict—Excessiveness. Verdict of $3,600 for personal
3   injury reviewed, and held excessive.

Headnote 1: 29 Cyc. p. 651. Headnote 2: 4 C. J. pp. 989, 990. Head-
note 3: 17 C. J. p. 1120.

Headnote 3: L. R. A. 1915F 30; 8 R. C. L. 674.

*Appeal from Boone District Court.*—SHERWOOD A. CLOCK,
Judge.

JULY 1, 1927.

Action to recover damages for personal injuries received by
the plaintiff by falling into a hole dug by the defendant in the
construction of an electric transmission line, which hole, it is
alleged, the appellant permitted to remain unguarded and im-
properly covered. There was a general denial and a plea of
contributory negligence. Cause tried to a jury, the trial result-
ing in a verdict for plaintiff in the sum of $3,600. From the
judgment entered thereon the defendant appeals.—*Affirmed on
condition.*

*John A. Hull,* for appellant.

*F. W. Ganoe,* for appellee.

DE GRAFF, J.—I. This case is predicated on the negligence

of the defendant, and we must look to the charge as stated in the instructions given by the trial court. No instructions were requested by the appellant, but certain of the instructions given are challenged in the motion for new trial.

The violation of a common-law duty is involved, and not a duty enjoined by a positive rule of statute. The defendant was not an insurer. It was responsible, if at all, for the negligence as charged by the court in its instruction, and that means the omission to do something which a reasonably prudent person, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing of something which à reasonably prudent person would not do, under like or similar circumstances. The trial court so instructed.

1. Tʀɪᴀʟ: instructions: nonpresented theory: waiver.

The defendant-appellant is a corporation engaged in operating and constructing electric light and power plants and electric lines used in connection therewith. In the latter part of August, 1924, it undertook the construction of an electric transmission line which crossed a certain 17-acre tract of Boone County land on which the plaintiff resided as a lessee.

It is the contention of appellee, in argument, that the defendant was a trespasser, in that it entered upon the land without the consent of the plaintiff, as lessee, although the evidence shows that the defendant had the express written consent of the owner of the land to construct the improvement in question. There is no occasion to rule this contention. The cause was not tried on this theory, and no instructions were given or requested involving the facts as now claimed by appellee.

The record discloses that, on Saturday, August 30, 1924, the defendant had all of its poles erected on said transmission line to the southeast corner of the 17-acre tract, and on that day dug two holes for two large poles, to which were to be attached what is commonly called an "H," or double fixture, to give strength to a long span of wire over a ravine at this place. These poles, 40 feet in length and 18 inches at the butt, had been placed near the point where the holes had been dug. These holes were about 6 feet deep and 2 feet in diameter.

It is elementary law that failure to properly guard or protect a dangerous place for the safety of those rightfully in such place constitutes negligence, and ordinarily presents a jury

question. It is admitted that the defendant dug the hole into which the plaintiff alleges he fell,· and it must be conceded that the plaintiff had a right to be where he was at the time of the alleged accident,—that is, in his own pasture.

The trial court submitted to the jury but one act of omission on which damages could be based, to wit: The fact that the defendant, after digging a' hole upon the plaintiff's premises, "negligently and carelessly allowed and permitted the same to remain unguarded and improperly covered during the evening and night of September 1, 1924."

It is. shown that the employees of the defendant-company ceased work on this job about 3:30 on the Saturday afternoon of August 30th, and did not return to their work until the following Tuesday, as Sunday and Labor Day intervened between quitting time and the resumption of the work.' The plaintiff fell into this hole on the evening of September 1st, Labor Day. He testified that he left his house on that evening about 8 o'clock, for the purpose of milking his two cows, which were in the pasture in which the holes were dug.

"When I got through milking the last cow, it was dark.· I went up the hill, and started for the house. When I got up the hill in the usual road or route I usually went when I went home to the house, and in my path was one. of these holes dug, and I went down. I had not seen that hole. I did not see it that night. I had seen no one there digging. I did not know the hole was there. No one had told me the holes were going to be dug. The hole I fell into was about 50 feet from where I was cutting wood on that afternoon. There were piles of logs and stumps to obstruct my view. I have walked there where this hole was before. Whenever I was around in that part of the pasture, that was about the only place to walk,—when I came up the side of the hill and followed the cow path right around."

By reason of the failure of the plaintiff to return to the house in the usual time, his wife sent the hired man to investigate. Plaintiff was found lying near the hole, and with the help of the wife and the farm hand, he .was taken to the house, and a doctor was called, who summoned an ambulance, and the injured man was taken to the hospital, where he remained for three or four days, before he was returned to his home, where he remained in bed a few days. Further attention will be given

the factual side of this case in connection with the brief points made by the appellant.

Although the defendant admits that it was its duty to take proper measures to prevent injuries by reason of having dug the hole, it asserts and contends that the evidence shows that it performed that duty by carefully covering the hole, and that, if the hole was uncovered at the time of the injury, the act of uncovering was chargeable to the interference of some stranger or trespasser, and not to this defendant.

There is no evidence which tends to prove that the barricades claimed to have been placed by the defendant's employees, and as testified to by them, had been removed by some evil-disposed person. The testimony offered by the plaintiff tends to prove that the hole in question was not covered. The appellant, however, urges that the applicable rule is as stated in *Weirs v. Jones County,* 80 Iowa 351, to the effect that, if a barricade so erected is removed without the consent or knowledge of the corporation, the latter is not liable for damages which result from the removal of the barricade unless the corporation has notice of such removal, or, in the exercise of reasonable diligence, should have known it, in time to have prevented the accident.

No instruction was given by the trial court in the instant case on the claim and theory of the defendant that someone had removed the covering which had been previously placed over the hole by the defendant's employees, nor was any instruction requested by the defendant, bearing on this proposition. The court did instruct, in substance, that, the defendant having admitted that it dug the hole, "it was the duty of the defendant, after said hole was dug, to keep it in a reasonably safe condition, and as a reasonably careful and prudent person would keep a hole in a place like that in question under like circumstances."

The theory of this case, under the facts, was sufficiently explained by the trial court; and in the absence of a request for more specific instructions, we discover no error.

The defendant recognized that it was bound to anticipate danger from digging the holes, and that it was its duty to properly cover same, whereby reasonable protection would be given a pedestrian from falling therein. Ordinary care required that the holes be properly covered, since the defendant was reasonably chargeable with knowledge that the occupier of the land, or

any person rightfully there, might fall into said hole; and even as to trespassers on said premises, the defendant was charged with the duty of not willfully or wantonly imperiling their safety.

We reach the conclusion that a fact question was presented, and we discover no reason to disturb the verdict on the ground that the evidence is insufficient to establish legal liability. We also reach the conclusion that, under the evidence, the question of contributory negligence was for the jury.

II.  Complaint is made by the appellant as to the admission of certain testimony which was introduced over objection, and later stricken by the court on motion.  It appears that Dr. Mark Jones was sworn as a witness on behalf of the plaintiff, and testified that he examined the plaintiff on December 28, 1925, and that he had never attended him prior thereto.  He was asked whether he had examined plaintiff to ascertain whether or not the plaintiff had a rupture or hernia, and over proper objection he was permitted to answer that he did so examine him.  The doctor was then asked: "What did you find about his physical condition?" To this question objection was made, and on the additional ground that no demand for damages in this particular is made in the petition.  The doctor was permitted to answer that plaintiff had a rupture, and that its effect was to cause him pain and distress and incapacitate him, and that to relieve it would require a major surgical operation, with the consequent expense, loss of time, and hazard.  It may be observed that this examination of the plaintiff by Dr. Jones was about a year and three months after the alleged injury, and more than three months after the petition was filed.

2. TRIAL: reception of evidence: curing error.

The defendant, upon the conclusion of the examination of this witness, moved to strike out all of this medical testimony. The court sustained the motion, and in an instruction told the jury "that the evidence concerning the rupture was withdrawn from the consideration of the jury, and that they should give no thought to it in arriving at their verdict."

Let it be conceded that this testimony was incompetent, and would constitute reversible error, had the same not been stricken and the quoted instruction been given.  It is the general rule that error in the admission of evidence is cured by subsequently

striking it out. *Croft v. Chicago, R. I. & P. R. Co.,* 134 Iowa
411. *A fortiori* the admission of incompetent evidence is cured
by specific instruction to the jury not to consider same, in addi-
tion to striking such evidence from the record. There are ex-
ceptions to this rule, and consequently the rule may not be
invariably applied.

In *State v. Paden,* 199 Iowa 383, we held that the incom-
petent evidence, although stricken by the trial court, was so
toxic in character that "it is beyond the realm of human possi-
bility that the mind of the jury was not poisoned by the facts
admitted," and that an incurable prejudice resulted.

In certain cases, the error is cured by the reduction of the
verdict, as in *Cawley v. Peoples G. & E. Co.,* 193 Iowa 536.

Prejudicial error will not be presumed; but we will pre-
sume, in a case of this character, that the jury did follow the
specific admonition of the trial court in not taking into consid-
eration the stricken evidence "in arriving at their verdict."

III.  The appellant contends that the verdict is excessive.
The jury awarded the sum of $3,600. Any verdict in a personal
injury case is but an approximation, and there is no rule where-
by the jury may estimate quantitatively, in dol-
lars and cents, the amount of damages, if any,
sustained by the plaintiff. It is simply the right
of the jury to determine, in the exercise of a fair and reason-
able discretion, what sum the plaintiff is entitled to receive in
damages. It is simply an attempt on the part of the jury to
determine reasonable compensatory damages, under all the facts
and circumstances of the case. Very few of the elements of
damage in such a case find a pecuniary yardstick.

3. New Trial:
verdict: ex-
cessiveness.

Let us test the excessiveness of the instant verdict by ques-
tion and answer form. Was the earning power of the plaintiff
diminished as to his then work and occupation? No. Did he
lose any wages by reason of the injuries received? No. When
did he return to his place of business after the injury? In two
weeks. What was the total amount of his ambulance and hospi-
tal bill? $18. How long was he in the hospital? Between three
and four days. Did the hospital physician or any other doctor
wait upon him professionally after he left the hospital? No.
We therefore inquire, What are the probative facts as to plain-
tiff's bodily pain and suffering, and what pain, suffering, and

inconvenience is it reasonably certain he will suffer in the future?

It is apparent that the jury could have found that the right wrist of the plaintiff was seriously injured. The plaintiff was engaged as a tenant farmer part of the year, and employed in a poultry house during the poultry season. When injured, he was receiving $30 per week in the poultry house, and at the time of the trial, $35 per week from another produce company. In March, 1925, he leased and occupied a 160-acre farm near Boone. As bearing upon his wrist injury, the plaintiff testified:

"I could milk with my left hand, and I would have to, if I milk. I can't pitch or shovel or do anything where there is any weight or strain comes on the wrist. I can't work my fingers."

Plaintiff also testified that he still suffers pain in his back and side, and that his neck is stiff, and that he has difficulty sleeping at night. Dr. Noland, called by the plaintiff, as a medical expert, testified that the X-rays taken by him November 2, 1925, of plaintiff's wrists show "an almost complete absorbtion of the semi-lunar bone of the right wrist, and more or less absorbtion of the *os magnum* of the right wrist; that the condition is not normal. I think there would be pain. The wrist would not be as strong as a normal wrist." No other medical testimony was offered.

It may be stated that plaintiff received another severe accidental injury on May 4, 1925, by falling or being thrown from a load of hay, whereby "the heel bone of his right foot was broken, and his ankle was jammed."

There is little occasion to review the evidence further. We recognize that no hard and fast rule can be adopted in a matter of this kind, and that decisions on the question of excessive verdicts are of little value as precedents. However, under all the facts and circumstances disclosed by the instant record, we are of the opinion that the amount of damages awarded is too large, and should be reduced.

If the plaintiff elects to take judgment in the sum of $2,500 within 30 days from the filing of this opinion in the office of the clerk of the Supreme Court of the state of Iowa, then this

cause will stand affirmed; otherwise, reversed.—*Affirmed on condition.*

Evans, C. J., and Stevens, Vermilion, and Kindig, JJ., concur.