CLARK M. SEXTON, appellee, v. JAMES LAUMAN et al., appellants.

No. 48074.

(Reported in 57 N.W.2d 200)

MARCH 10, 1953.

John D. Randall and Richard F. Nazette, both of Cedar Rapids, for appellants.

Will J. Hayek, of Iowa City, and Lambach, Kopf & Berger, of Davenport, for appellee.

MULRONEY, J.—Glenn Cullen, a student at the State University of Iowa, possessed a Hudson touring car. On the evening of January 10, 1947, he and five fellow students drove to Hills, Iowa, a little town about six miles south and west of Iowa City on paved highway 218. Glenn drove the car on the trip to Hills and driving conditions were good and the pavement was dry. By the time the boys were ready to start back, about 11:30 p.m., the weather had changed and the pavement was icy and slippery. James Lauman drove the car on return trip but Glenn Cullen· sat in the front seat with him and he told Lauman not to drive over thirty-five miles an hour. When Lauman drove around a curve at the top of a long hill, called Indian Lookout Hill, the car would not straighten up and it started sliding sidcwise down the hill. It continued sliding in a sidewise position, with the rear énd over the center about four feet, until it collided with the car in which Clark Sexton was a passenger, traveling up the hill.

The Hudson automobile was registered in the name of Nelle Cullen, an aunt of Glenn Cullen, and Sexton filed suit on January 9, 1949, against James Lauman, Glenn Cullen and Nelle Cullen for personal injuries and damages sustained in the collision. He alleged negligent operation of the Hudson car owned by Glenn and Nelle Cullen and that the car was being driven with their knowledge and consent. The trial court submitted the case to the jury with three forms of verdicts, in one of which the jury could return a verdict against the driver and defendant Glenn Cullen if the jury found Glenn Cullen "was the owner or part owner" of the Hudson car. In the second form of verdict the jury could return a verdict against all of the defendants if they "should find that defendant Nelle Cullen was the owner or part owner" of the Hudson car. In the third form of verdict the jury could find for the defendants if they found plaintiff was not entitled to recover. The jury used the second form of verdict, finding for plaintiff against all of the defendants and assessed his recovery at $3300, and defendants appeal from the judgment entered thereon.

I. The first assignments of error deal with questions of ownership of the Hudson car and consent to Lauman's driving it on the night of the accident. Glenn Cullen testified he bought the car in June 1946. The car was registered in Nelle Cullen's name and re-registered by Glenn in January 1947 in her name. It was registered in Nelle Cullen's name at the time of the accident but Glenn said he was the owner of the car and his explanation of the registration in his aunt's name was as follows: "Well, when I got out of the Army and I came home you couldn't buy a car any place and if you did find one to buy it would cost you about four or five hundred dollars more than it was supposed to, and my aunt's name was first on this list so she let me buy the car and the car dealer wanted to put it in her name and he asked me not to get it transferred for four or five months, so I just never did after that because I wasn't around— well, the county seat town is Storm Lake and I just never was around there."

Nelle Cullen filed a separate answer in the case denying that she was the owner of the car and denying that Lauman

was at any time driving any car owned by her, with her knowledge and consent. Nelle Cullen did not testify in the case.

There is no question at all about the correctness of the submission of the case for a finding against Glenn Cullen on the issues of ownership and consent. He said he owned the car and admitted Lauman was driving under his directions. The question is as to the submission of the case for a possible finding against Nelle Cullen that she was an owner or part owner of the Hudson car and that she consented to its operation by Lauman. We will take up first the question of whether the record warranted the submission of the question of Nelle Cullen's ownership of the Hudson car.

II. Section 321.493, Code, 1950, provides as follows: "In all cases where damage is done by any car by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage."

While the word "owner" is singular in the statute it may extend to the plural "owners" so as to fasten liability on all of the owners of the automobile if there are two or more such owners of a single automobile, section 4.1, paragraph 3, Code, 1950. Nelle Cullen argues plaintiff had the burden of proving her ownership of the car, and the only evidence of her ownership is the registration in her name and such evidence of registration standing alone will not make out a prima-facie case on the issue of her ownership of the car. Let us examine this contention without any reference to defendants' testimony. It is true, as Nelle Cullen argued, that plaintiff, in his case against her, had the burden of proving she was the owner. Would he make out a prima-facie case by proving the car was registered in her name at the time of the accident? We hold he would and if there was no other testimony bearing on the issue of her ownership it would require the submission of the issue to the jury. Frew v. Barto, 345 Pa. 217, 26 A.2d 905; Conley v. Mervis, 324 Pa. 577, 188 A. 350, 108 A. L. R. 160; Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 221 N.W. 514; Farrelly v. Heuacker, 118 Fla. 340, 159 So. 24; Ford v. Hankins, 209 Ala. 202, 96 So. 349; Ferris v. Sterling, 214 N. Y. 249, 108 N.E. 406; 9 Blashfield Cyclopedia of Automobile Law, Part 2, section 6272; 2 Berry on Automobiles, Sixth Edition, section 1343.

In Farrelly v. Heuacker, 118 Fla. 340, 342, 159 So. 24, 25, it is stated: "It is settled law in this country that the title certificate and the person to whom the license is shown to be issued constitutes presumptive ownership in the car, but such presumption may be met and overcome by evidence."

In 2 Berry on Automobiles, Sixth Edition, section 1343, the rule is stated: "Evidence that the automobile which caused the plaintiff's injuries displayed a certain license number, and that this number was registered in the office of the secretary of state in the defendant's name as owner, makes out a *prima facie* case of ownership in the defendant."

In 9 Blashfield Cyclopedia of Automobile Law, Part 2, section 6272, it is stated the certificate of registration is "documentary proof of ownership" the same as a liability insurance policy, chattel mortgage or bill of sale covering the car involved in the accident.

In Ferris v. Sterling, 214 N. Y. 249, 253, 108 N.E. 406, 407, it is held: "The license number of the car, coupled with evidence that the defendant held the license, was prima-facie proof that the defendant was the owner."

Statutes similar to ours fastening liability on the owner of an automobile negligently driven by another are quite common. We have found no case where, in suits under such statutes, it was ever held proof of registration was insufficient to make out a prima-facie case of ownership against the registrant. No case so holding is cited in appellant's brief. The case of Craddock v. Bickelhaupt, 227 Iowa 202, 210, 288 N.W. 109, 113, 135 A. L. R. 474, is not authority for the proposition that proof of registration does not make out a prima-facie case of ownership. In that opinion we said "any inference of ownership arising from the fact that the car was registered in the name of defendant at the time of the accident was met and overcome by other evidence introduced by plaintiff which established" ownership in another. No one contends that proof of registration *establishes* ownership in the registrant. As stated in 61 C. J. S., Motor Vehicles, section 517, page 278: "Positive, unequivocal testimony that defendant was not the owner will rebut a contrary presumption arising from the evidence * * *." The Craddock

case cites the case of Abraham v. Hartford Fire Ins. Co., 215 Iowa 1, 244 N.W. 675, and quotes a portion of an approved instruction in the latter opinion to the effect that " 'the transfer of the certificate of registration [to the daughter] was merely prima-facie evidence of ownership in the daughter.' " The Craddock case recognizes the prima-facie case is made out by proof of registration but holds it was overcome by other evidence.

We will discuss the proposition of whether the prima-facie case is overcome by defendants' evidence in the next division. But the rule we understand is established by all of the authorities is that, under statutes where liability depends on ownership of a car, proof of registration makes out a prima-facie case of ownership in the registrant. This seems a logical rule, and one that certainly conforms to a common public attitude toward the registration certificates as indicia of ownership. It certainly is not putting too great a burden on registrants to make them assume some defensive responsibilities if in fact they do not own the car.

The case of Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 573, 221 N.W. 514, 516, is direct authority for holding that the issue of registrant's ownership "was clearly for the jury to determine." There we upheld the judgment against the registered owner although it was "conclusively shown" the car was in the possession of another and the defendant testified it had sold and delivered the car to the possessor but had failed to change the registration.

 III. Nelle Cullen filed a separate answer in which she denied ownership of the Hudson car. She did not testify in support of this denial. The only evidence we have is the testimony of her nephew Glenn that he owned the car. Is this sufficient to warrant a holding that the prima-facie case was rebutted as a matter of law? We hold not. This testimony of Glenn's does not rise to the positive unequivocal testimony of nonownership in Nelle Cullen, such as to warrant taking the issue from the jury. To so hold would be saying the prima-facie case of ownership established by proof of registration in defendant would not mean much. If it can always be defeated by a third person—who may or may not be a party to the litigation—

testifying he owns the car that caused the injury, then the prima-facie case can be defeated by any slight evidence of defendant's nonownership. It is practically saying there can be no recovery because of ownership of the car unless defendant admits such ownership. It matters little that Glenn Cullen fortifies his story of ownership with an explanation of how the car came to be registered and re-registered in his aunt's name. In so far as the case against Nelle Cullen is concerned, the evidence is no more than a simple denial of her ownership—something less than her denial of ownership if she had chosen to so testify. The record justifies an unfavorable presumption against Nelle Cullen for her unexplained failure to testify. Shideler v. Naughton, 163 Iowa 616, 145 N.W. 280; Henderson v. Ball, 193 Iowa 812, 186 N.W. 668. Upon the whole record we hold the issue of Nelle Cullen's ownership of the Hudson automobile was for the jury.

IV. It is admitted by all that proof of ownership of a motor vehicle carries with it a presumption or inference that the car is being driven with the owner's consent. The inference is not a strong one but in Seleine v. Wisner, 200 Iowa 1389, 1392, 206 N.W. 130, 131, we said, in referring to this consent arising from ownership of the car: "This is a mere inference, and is recognized as a weak one, but sufficient to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, the car was operated."

In the case of Landry v. Oversen, 187 Iowa 284, 286, 174 N.W. 255, 256, we said: "The owner may well be assumed to know how and by whom his property is being used, and if he deny that the automobile was being operated for him, it is not too much to exact from him a showing of the facts claimed to sustain such denial; and such is the rule."

The facts here bring the case quite closely within Olinger v. Tiefenthaler, 226 Iowa 847, 852, 285 N.W. 137, 139. In that case Louis Tiefenthaler let his brother take one of his cars out to his farm. The brother kept the car at his farm most of the time and on occasions let a man by the name of Thorpe drive it. On the day in question Thorpe obtained permission from the brother to drive the car and Thorpe testified that he had never at any time received permission to drive the car from the owner,

Louis Tiefenthaler. The car was involved in an accident while Thorpe was driving it and it was sought to hold Louis Tiefenthaler as the owner. In holding the owner was not entitled to a directed verdict on the issue of consent the opinion states:

"Appellant testified that his brother had his permission to use the car and from July 1933, to the date of the accident, the car was at his farm part of the time and in his brother's possession at Carnarvon part of the time. He knew the extent of the authority he had granted his brother William and if it were a fact that his brother did not have authority to permit others to drive the car and he had not consented to the driving of his car by Thorpe, he should have so testified. It was his duty to state, so far as he was able, the facts on which he relied to sustain his denial of consent and to explain 'by what authority, if not his own, the car was operated', and he did not do so."

The only testimony that rebuts the presumption or inference of consent, that arises from proof of Nelle Cullen's ownership, is the testimony of James Lauman: "Nelle Cullen never gave me permission to drive the car that I was driving the night of the accident." Of course he meant Nelle Cullen never gave him express authority to drive the car. This is the same kind of testimony with which the owner sought to rebut the consent inference in the Olinger case. There Thorpe, the driver of the car, said the owner did not give him consent to drive it. There the operator had the consent of the owner's brother who had possession of the car and here the operator had consent of the person who had possession of the car and who was the nephew of the person whom the jury could find was the owner. In fact this case is stronger for the plaintiff, for in the Olinger case the owner did testify, while here the person whom the jury could find was the owner did not testify at all.

Of course there is no testimony of written or oral consent on the part of Nelle Cullen that James Lauman could drive the car on January 10, 1947. The question is not the quantum of plaintiff's proof on the issue of consent. The question is the sufficiency of the owner's showing of nonconsent if he is to avoid the finding of consent that will be inferred from his ownership. When ownership is proven it is assumed the owner

"exercised the ordinary control and incidents of ownership" over the car. Lange v. Bedell, 203 Iowa 1194, 1196, 212 N.W. 354, 355. Under all of the cases, one of the presumptions arising from proof of ownership is that it was being driven with the owner's consent.

In Bridges v. Welzien, 231 Iowa 6, 9, 300 N.W. 659, 661, the opinion holds a prima-facie case against defendant on the issue of consent arises from defendant's ownership of the vehicle and it is not necessary for plaintiff "to establish express consent", and consent "may be implied." There we held the issue of consent was for the jury. In the instant case if the presumption of consent is weak, the evidence that opposes it is something less than strong.

We hold that at the close of the entire case the issues of Nelle Cullen's ownership of the Hudson car and her consent to its being driven by James Lauman were for the jury. Since defendant Glenn Cullen had admitted ownership of the car and testified Lauman was driving under his direction the court was justified in instructing the jury that he would be liable if the jury found plaintiff's injuries were the proximate result of Lauman's negligence and plaintiff was free from contributory negligence. Thus the court properly instructed on the issues of ownership and consent as to one defendant and properly submitted the same issues as to the other. We know of no way the court could do this, other than the way he handled it. The evidence would support a finding of one or two owners of the Hudson car. That is the way the court submitted it. If the jury found plaintiff had proved his case on the issue of ownership against both defendants then they were each "part-owners" of the car. The term has a common usage to denote joint ownership of a chattel when there is no contract between the owners. Breck v. Blair, 129 Mass. 127. Under the record we hold the issues of ownership and consent were correctly presented to the jury.

■ V. The trial court admitted testimony of the sheriff to the effect that Glenn Cullen said Nelle Cullen owned the car. The statement was made during the officer's official investigation and the court later struck out this testimony and in his instructions he told the jury that this evidence had been withdrawn and they were not to "consider the same in any particular" in ar-

riving at their verdict. There was no prejudicial error. McKee v. Iowa Railway & Light Co., 204 Iowa 44, 214 N.W. 564; Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464.

VI. The trial court permitted plaintiff to testify relative to the cost of hiring others to do the work he was unable to do on account of his injuries. Plaintiff was in the general trucking business. He stated that prior to the accident he worked full time in his trucking business and hired extra help. He stated at one place that he did most of the repair work and later, "I drove whenever I had business to do driving. I drove one of the large trucks for the long-distance operation and also local driving * * *." Plaintiff said, on direct examination, that after the accident his business required him to hire other drivers in the year 1947 at various times, and he had to pay them for doing the work he was unable to do because of the accident. He said: "I believe it was four or five [drivers], I don't remember for sure." When asked how much he paid these men he said: "Well, I hired help when I could get it and I think the amount was approximately $900 in 1947." When asked to state as to 1948, and the work he had to pay for to take the place of the work he "would have done had [he] not been injured", he replied: "During 1948 there was a bill of approximately $800." On cross-examination plaintiff said: "From 1947 until 1949 I continued to have two long-haul trucks. I didn't have the two men that I formerly had running the two long-haul trucks, one of the men quit on October 31, 1947. After that I only had one steady over-the-road driver. During the year of 1946 I only drove over-the-road trucks when a driver did not have rest enough or when somebody was sick. I would say this would be about ten or twelve times during the year."

The trial court told the jury if they believed plaintiff entitled to recover he would be entitled to recover for loss of earning power and loss of time from his work during the years 1947 and 1948 in an amount not to exceed $1700. As will be seen, this figure is based on $900 for the year 1947 which plaintiff *thought* was the *approximate* amount he paid for extra drivers for that year and $800 for the year 1948 which plaintiff said was the *approximate* bill for extra services made necessary by his inability to work.

In Bascom v. Hoffman, 199 Iowa 941, 945, 203 N.W. 273, 275, we stated:

■ "We are disposed to hold the rule to be that, whenever the evidence shows that the person is injured, and unable to pursue his ordinary vocation, and employs someone to carry out the work for him, such fact is admissible, and the reasonable amount of wages that he paid the one so employed is also admissible: first, as tending to show the extent of his disability or impairment in the carrying on of his business, and second, to be taken into consideration in determining the worth and loss of his time. This seems to be the rule in 4 Sutherland on Damages (4th Ed.), Section 1248, and the cases cited under Note 30 therein. We are of the opinion, however, that such testimony should be restricted to the proof of the employment of the help who did do the work that the plaintiff would have done, had the injury not occurred."

The subject of the admissibility of the expense of hiring a substitute during plaintiff's incapacity due to the injury sued upon is one upon which the courts are not in complete agreement. See Stynes v. Boston Elevated Ry. Co., 206 Mass. 75, 91 N.E. 998, and note 30 L. R. A., N.S., 737. Sometimes the evidence is allowed as an item of damage along with the expense of hospital bills, physician's services, nursing hire, and expenses of that nature. See Owl Taxi Service v. Saludis, Tex. Civ. App., 122 S.W.2d 225; Powell v. Kansas Yellow Cab Co., 156 Kan. 150, 131 P.2d 686; Trahan v. Lantier, La. App., 33 So.2d 136; 25 C. J. S., Damages, section 47. In Bascom v. Hoffman, supra, we stated (page 944 of 199 Iowa) that this evidence "is not to be considered as one of the elements for which damages can be allowed." We said it is "admissible * * * [as] tending to show that there was a decrease of plaintiff's ability to work, and the extent thereof." We are supported in this theory by many of the cases cited in the note in 30 L. R. A., N.S., 737, and the note in Sutherland, above. But the two theories reach the same result. The claim is for loss of earning capacity. Strictly speaking, a businessman's damage is loss of profits when his business is deprived of his services by the injury, and his services were

582

the predominant factor in producing the profits. But it is treated as loss of earning capacity and recoverable in that form. Restatement, Torts, section 924, comments c and g.

As applied to this case the rule of Bascom v. Hoffman, supra, would admit evidence that plaintiff employed others "to carry out the work for him * * * and the reasonable amount of wages that he paid the one so employed * * * as tending to show the extent of his disability or impairment in the carrying on of his business." And this evidence "should be restricted to the proof of the employment of the help who did do the work that the plaintiff would have done, had the injury not occurred."

What have we here in compliance with this rule? Plaintiff gives what he thinks is an approximate total for all wage payments made to the drivers he hired (he does not remember the exact number) in 1947 to do the work that he was unable to do because of his injuries. He says he hired help when he could get it and he thinks the amount was approximately $900. When asked to tell the work he "had to pay for" to take the place of the work that he would have done in 1948 he merely states that in 1948 "there was a bill of approximately $800." There was no attempt to show that the payments were reasonable, as is required under the rule of the Bascom case, supra. In 15 Am. Jur., Damages, section 141, the rule is stated:

"In some states the plaintiff may recover, as a part of his disbursements or damages, money expended in hiring a man to attend to his business or wages which he was obliged to pay a substitute during his confinement or incapacity. To warrant a recovery of such items, however, both the fact that such help was necessary and the reasonable value of the services of the substitute must be shown."

▉▉▉ Plaintiff was introducing this evidence to show loss of earning capacity for 1947 and 1948 due to his injury. There should be "definiteness of proof as to the amount of damage as far as is reasonably possible." Restatement, Torts, section 912, page 575. There is an insufficient showing that $900 was spent in 1947 and $800 in 1948 for help, made necessary by reason of plaintiff's incapacity. As stated in Bascom v. Hoffman, supra, this testimony of hiring substitutes is to be restricted to proof

of employment of help who did actually do the work plaintiff would have done, but for the injury. Plaintiff cannot toss off some round figures of approximate totals and secure the submission of his damage claim for loss of earning capacity on such evidence. He knew, or should have known, exactly how much he paid for wages for work that he could have done if not incapacitated by the tort. As stated in 25 C. J. S., Damages, section 162(2): "Damages should be proved with all the certainty the case permits."

There is enough uncertainty in the ordinary tort action where the jury must translate personal injuries into dollars, but when part of the claim is for loss of earnings or loss of earning capacity and based upon figures that are readily obtainable to plaintiff, reasonable proof of the extent of damage is required. Restatement, Torts, section 912, comment d.

We hold the evidence was too vague and unsatisfactory; that it should have been stricken for failure to show any payment of wages for substitutes was reasonable; that there was an insufficient showing that the hiring of extra men was necessary; and that the evidence would not constitute a basis for submitting to the jury the claim for loss of earning capacity for the years 1947 and 1948. Since this testimony was the basis for the trial court's submission of the claim for "loss of earning power and loss of time" in an amount not to exceed $1700 for the years 1947 and 1948 the case must be reversed. We have examined the other claims of error. They are based on incidents that occurred in the trial which we doubt constitute reversible error, but in any event they will probably not occur in a retrial of this case. The cause is reversed, and remanded for a new trial against all defendants.—Reversed.

BLISS, GARFIELD and THOMPSON, JJ., concur.

OLIVER, J., concurs in all but Division VI and would affirm.

HAYS, J., SMITH, C. J., and WENNERSTRUM, J., concur specially in result.

LARSON, J., takes no part.

584

HAYS, J. (specially concurring)—I concur in the result based upon Division VI but am unable to agree in so far as it applies to Nelle Cullen. In my opinion there is not sufficient evidence of either ownership or consent to warrant submission of these questions to the jury as to her.

SMITH, C. J., and WENNERSTRUM, J., join in this special concurrence.