# IN THE COURT OF APPEALS OF IOWA

No. 23-1423
Filed May 8, 2024

**NORDSTROM, INC.,**
    Plaintiff-Appellant,

**vs.**

**PAMELA CARMER f/k/a PAMELA HYDE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Heather L. Lauber, Judge.

An employer appeals a district court order affirming a decision of the workers' compensation commissioner. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

James M. Peters of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

Benjamin R. Roth of Ball, Kirk & Holm, P.C., Waterloo, for appellee.

Considered by Bower, C.J., and Badding and Langholz, JJ.

**BOWER, Chief Judge.**

Nordstrom, Inc. appeals the district court's order affirming the decision of the workers' compensation commissioner awarding industrial disability benefits to Pamela Carmer for injuries to Carmer's shoulders. Upon review, we affirm in part, reverse in part, and remand with instructions.

## I.     *Background Facts and Proceedings*

The parties agree Carmer sustained a work-related injury to her right shoulder in August 2018. In December, Dr. Brendan Patterson performed a "right shoulder arthroscopy rotator cuff repair, open subpectoral biceps tenodesis, '[e]xtensive debridement,' and subacromial decompression" on Carmer. She engaged in physical therapy following her surgery. Dr. Patterson examined Carmer in May 2019 and noted she "was doing well overall, her pain was minimal, her shoulder felt very comfortable, and she had improved with physical therapy." Dr. Patterson released Carmer without restrictions with use of her shoulder "as tolerated."

In fall 2020, Carmer requested medical care from Nordstrom for pain in her left shoulder "due to compensating for her work injury with her other arm." Nordstrom referred Carmer to Dr. James Milani, a family practitioner, who conducted an independent medical examination in January 2021. Dr. Milani noted Carmer "has had no specific injury or event to the left shoulder." He diagnosed Carmer with "[l]eft shoulder pain–etiology uncertain. Most likely contributor to pain is underlying degenerative changes and/or progressive underlying systemic inflammatory arthritis/rheumatologic disorder that has not been diagnosed yet. It appears she has an advancing destructive joint disease/rheumatologic etiology

that is affecting more than just her left shoulder." Dr. Milani opined Carmer's left-shoulder injury was not causally related to her August 2018 work injury.

Dr. David Segal, a neurosurgeon, conducted an independent medical examination of Carmer later that month. Dr. Segal noted following Carmer's work-related injury in August 2018, she "has now developed symptoms on the left side that are caused by favoring her right arm and corresponding with the overuse of her left arm . . . ." Specifically, Dr. Segal opined Carmer's left-shoulder symptoms "began when [she] became more active after the surgery, and the right shoulder symptoms increased at that time, requiring her to rely on her left arm for most activity." He noted, "Because of the pain and limitation in range of motion of her right arm since this injury, [Carmer] uses her non-dominant left arm for most of life activities where she would normally use her right arm. [She] also uses her left arm alone for most activities where should have used both arms."

Dr. Segal disagreed with Dr. Milani's discussion of rheumatoid arthritis as a possible cause for Carmer's symptoms, and he further opined the possibility Carmer has osteoarthritis "does not preclude one material factor in the causation of her left shoulder symptoms, being overuse and compensation due to the limited function of her right shoulder." Dr. Segal acknowledged when Carmer reported to Dr. Patterson in May 2019, "she was doing well," but he pointed out Dr. Patterson's last examination of Carmer was at the time of her "peak improvement after surgery and physical therapy." Dr. Segal noted, "It is common for regression to occur after physical therapy has ended and a patient resumes normal life activities." Dr. Segal observed Dr. Mark Taylor's examination of Carmer in October 2019, "showed worse symptoms . . . than Dr. Patterson's exam, and . . . did not indicate

inflammatory arthritis as the cause." Dr. Segal opined "one material factor in the causation of [Carmer's] left shoulder symptoms is the compensation and overuse needed of her left shoulder due to the work injury."

Carmer petitioned for workers' compensation benefits for both injuries. Nordstrom admitted Carmer sustained a work-related injury to her right shoulder in August 2018 but denied she sustained a sequela injury to her left shoulder. Specifically, Nordstrom argued Carmer's "underlying rheumatoid arthritis or joint problems . . . are the cause of her left upper extremity symptoms." A deputy workers' compensation commissioner agreed with Carmer, determining the greater weight of evidence supported a finding Carmer sustained a sequela to her left shoulder caused by the work injury to her right shoulder. In reaching this conclusion, the deputy noted it "f[ound] Dr. Segal's opinion on causation more persuasive than Dr. Milani's opinion." The deputy further stated:

> Contrary to Dr. Milani's opinion, there is no evidence Carmer has rheumatoid arthritis or that an autoimmune or systemic rheumatological disease or process is the cause of her left-sided symptoms. It is undisputed Carmer has swelling and deformity in her hands. Carmer testified she underwent testing to determine if she had rheumatologic disease, which was negative. Even if Carmer has underlying arthritis in her left shoulder, which is not supported by her medical records, I do not find Nordstrom has proven underlying preexisting arthritis is the sole cause of Carmer's left shoulder symptoms.
>
> The evidence supports that after her right shoulder surgery and physical therapy, Carmer's condition improved at the time Dr. Patterson released her from care. Carmer testified at hearing her symptoms later increased in her right upper extremity and she started relying more on her left upper extremity following surgery and that she did not recognize the seriousness of the problems with her left upper extremity at first. While Carmer struggled to recall dates during the hearing, I found her generally to be a credible witness, given she maintained appropriate eye contact and did not engage in furtive movements during the hearing. Objective testing performed by Dr. Taylor six months after Dr. Patterson released her from care

shows a decline in her right upper extremity, consistent with Dr. Segal's opinion and her testimony. Dr. Segal cited to authority supporting his contention overuse of the opposite limb following an injury can cause pathology. This finding is consistent with Carmer's credible testimony in this case. I find Carmer has established she sustained a sequela to her left upper extremity caused by the work injury.

Upon concluding Carmer had suffered compensable permanent injuries to her right and left shoulders, the deputy also concluded Carmer's injuries should be treated as unscheduled injuries under Iowa Code section 85.34(2)(v) (2022). The deputy therefore calculated Carmer's compensation based on her loss of future earning capacity, which the deputy found to be seventy percent, and awarded compensation on that basis.

Nordstrom appealed to the commissioner. The commissioner affirmed the deputy's arbitration decision, with a slight modification to decrease the deputy's industrial disability rating. The district court affirmed the commissioner's appeal decision on judicial review. Nordstrom appeals.

## II.    Standard of Review

"Iowa Code section 17A.19(10) 'governs judicial review of administrative agency decisions.'" *P.M. Lattner Mfg. Co. v. Rife*, 2 N.W.3d 859, 865 (Iowa 2024) (citation omitted). Because "the legislature has not vested the workers' compensation commissioner with interpretive authority regarding Iowa Code chapter 85," we "review the commissioner's interpretation of Iowa Code chapter 85 for correction of errors at law instead of deferring to the agency's interpretation." *Id.* (citation omitted). We review factual determinations made by the commissioner for substantial evidence. *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). We will only reverse the commissioner's application of law to facts if it was

"irrational, illogical, or wholly unjustifiable." *Id.* (quoting Iowa Code § 17A.19(10)(*l*)). "This standard requires us to allocate some deference to the commissioner's determinations, but less than we give to the agency's findings of fact." *Id.*

### III.    *Causal Relationship*

Nordstrom challenges whether substantial evidence supports the commission's finding Carmer's left shoulder injury was "causally related to her workplace injury to her right shoulder." Under our workers' compensation statute, employers must pay compensation to employees for "personal injuries . . . arising out of and in the course of the employment." Iowa Code § 85.3(1). Because "[m]edical causation is a question of fact vested in the commissioner's discretion," *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014), Nordstrom is entitled to judicial relief only if the commissioner's finding "is not supported by substantial evidence in the record before the court when that record is viewed as a whole," Iowa Code § 17A.19(10)(f). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Brooks*, 843 N.W.2d at 889 (citation omitted). So the question before us is not whether the evidence supports a different finding; it is whether it supports the finding the commission made. *Id.*

Nordstrom claims Carmer's left shoulder injury is "highly speculative" and "lacks any indicia of reliability" because Carmer "failed to report any symptoms involving her left shoulder for over two years." Indeed, Carmer testified she started noticing pain on her left side in spring or summer 2019. At first the pain felt like "post-workout soreness," but it had "gotten worse," like "a burning sensation." Dr. Segal's report explained why injuries like Carmer's were slow to progress. According to Dr. Segal, "the symptoms in the left shoulder developed at the time [she] was overusing and compensating for the limited use of her right shoulder." As the commissioner noted:

> I understand defendant's frustration with this outcome. Claimant's left shoulder complaints did not manifest until long after her initial right shoulder injury. As a result, mentions of claimant's left shoulder are scant in the evidentiary record. However, as explained by Dr. Segal, "There was no mention of the left shoulder symptoms in the records because the records predated the time that [claimant] realized the left shoulder was substantial and not transient."

Nordstrom also claims Dr. Segal's report is "unreliable" because Carmer provided "inconsistent" descriptions with respect to when her symptoms started. However, the commissioner stated:

> Like the deputy commissioner, I find Dr. Segal's opinions to be more persuasive than those of Dr. Milani. While it is undisputed that claimant has swelling in her fingers and hands, there is no objective evidence of rheumatoid/inflammatory/autoimmune arthritis—only Dr. Milani's speculation. Furthermore, even if claimant has underlying arthritis, such a pre-existing condition does not preclude the possibility that overuse caused or materially aggravated that condition.

"Medical causation 'is essentially within the domain of expert testimony.'" *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (citation omitted). "[T]he determination of whether to accept or reject an expert

opinion is within the 'peculiar province' of the commissioner." *Bridgestone Americas, Inc. v. Anderson*, ___ N.W.2d ___, ___, 2024 WL 1334165, at *3 (Iowa 2024) (citation omitted). "[H]ere, . . . we see no grounds to second guess the commissioner's reliance on the expert opinion[]" of Dr. Segal. *Id.* Substantial evidence supports the commissioner's findings in this case.

## IV.  *Scheduled or Unscheduled*

Nordstrom next claims the commissioner erred in concluding Carmer's injuries should be compensated as unscheduled injuries rather than scheduled injuries. Nordstrom argues the legislature "clearly intended to make shoulder injuries into scheduled member injuries when it amended the schedule in 2017 to include shoulders." According to Nordstrom, the commissioner should have found Carmer's injuries to be scheduled injuries under Iowa Code section 85.34(2)(n), rather than unscheduled injuries under section 85.34(2)(v).

Our supreme court recently addressed this issue. In *Bridgestone Americas, Inc.*, 2024 WL 1334165, at *2, an employee sought compensation for an injury to his right shoulder and an injury to his right arm. The commissioner found the injuries were compensable and "should be treated as unscheduled injuries under Iowa Code section 85.34(2)(v)." The employer appealed, challenging in part the commissioner's finding the injuries should be compensated as unscheduled injuries under section 85.34(2)(v), rather than scheduled injuries under section 85.34(2), paragraphs (m) and (n). *Id.* In addressing the employer's claim, the court observed it was "essentially a question of statutory interpretation." *Id.*, 2024 WL 1334165, at *4. The court determined:

Following our study of the plain language of section 85.34, we conclude that the commissioner erred by concluding that [employee] Anderson suffered an unscheduled injury. As mentioned, an injury can be unscheduled only if it fits in paragraph (v). Iowa Code § 85.34(2)(v). And by its plain terms, paragraph (v) can only apply to injuries "*other than those* . . . described or referred to in paragraphs 'a' through 'a.'" *Id.* (emphasis added). But Anderson's injuries are not "*other than those* . . . described or referred to in paragraphs 'a' through 'u.'" *Id.* (emphasis added). Anderson's injuries are to his shoulder and arm. Both are "described or referred to" in the schedule composed of "paragraphs 'a' through 'u.'" *Id.* § 85.34(2). Specifically, Anderson's shoulder injury is "described or referred to" in paragraph (n), which states: "n. For the loss of a shoulder, weekly compensation during [a percentage of] four hundred weeks." *Id.* § 85.34(2)(n). And Anderson's arm injury is "described or referred to" in paragraph (m), which states: "m. The loss of two-thirds of that part of an arm between the shoulder joint and the elbow joint shall equal the loss of an arm and the compensation therefor shall be weekly compensation during [a percentage of] two hundred fifty weeks." *Id.* § 85.34(2)(m). Because Anderson's injuries are "described or referred to" in scheduled paragraphs (m) and (n), paragraph (v) does not apply. *Id.* § 85.34(2). The injuries are scheduled, not unscheduled.

*Id.*

Following this reasoning, we likewise conclude because Carmer's shoulder injuries are "described or referred to" in scheduled paragraph (n), paragraph (v) does not apply. *See also id.*, 2024 WL 1334165, at *6 (noting "paragraph (v) generally doesn't apply to injuries to . . . shoulders"). We also note in reaching its decision, the supreme court considered—and rejected—the employee's counterargument relating to the statute's use of the singular rather than the plural to describe compensation for injuries. *Id.*, 2024 WL 1334165, at *5. Similarly, here, Carmer maintains because section 85.34(2)(n) provides compensation for "a" shoulder, "meaning only one," her injuries to both shoulders are not addressed by section 85.34(2)(n), and therefore fall under "the catchall provision of section 85.34(2)(v)." On this question, the supreme court stated:

Anderson notes that paragraph (n) describes compensation for "a shoulder"—singular—and paragraph (m) describes compensation for "an arm"—also singular. *Id.* § 85.34(2)(m), (n). From this, Anderson infers that the schedule cannot apply to him because his injuries include both "a shoulder" and "an arm."

We disagree. To begin with, when we interpret statutes, we usually don't put too much weight on the use of "a" or "an" or to other uses of the singular or plural. *Id.* § 4.1(17) ("Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."); *see Little v. Davis*, 974 N.W.2d 70, 75–76 (Iowa 2022) (applying Iowa Code section 4.1(17)); *Porter v. Harden*, 891 N.W.2d 420, 426 (Iowa 2017) (observing that Iowa Code section 4.1(17) "should caution us against reading too much into the presence of the words 'a' or 'an' in a statute depending on the context"); *Sexton v. Lauman*, 244 Iowa 570, 57 N.W.2d 200, 202 (1953) (construing a singular term in a statute to extend to the plural).

Moreover, the singular/plural distinction is not especially relevant here. This is not a case of plural shoulder injuries or plural arm injuries. Rather, Anderson suffered injuries to "a shoulder" and "an arm." Iowa Code § 85.34(2)(m), (n). So it makes sense to compensate Anderson under the scheduled provisions for "a shoulder" and "an arm." *Id.*

This view is supported by the narrow scope of paragraph (v), the provision for unscheduled injuries. Paragraph (v) *does not say* that it applies unless a patient's injuries fit into *only one* of the paragraphs identified as (a), (b), (c), etc. *Id.* § 85.34(2)(v). Rather, according to its plain text, paragraph (v) *only* applies to injuries "other than those . . . described or referred to in paragraphs 'a' through 'u.'" *Id.* And, as explained, Anderson's injuries are "described *or referred to* in paragraphs 'a' through 'u.'" *Id.* (emphasis added). They are "described or referred to" in paragraphs (n) and (m), both of which are part of the schedule composed of "paragraphs 'a' through 'u.'" *Id.* § 85.34(2). So paragraph (v) does not apply.

*Id.*

We acknowledge this is a case of "plural shoulder injuries." But we are not convinced we should interpret the *Bridgestone* court's statement "[t]his is not a case of plural shoulder injuries" to insinuate injuries to both shoulders should be treated any differently than two scheduled injuries. Indeed, we believe the court's subsequent example sheds light on this very question:

For example, paragraph (e) makes the loss of the fourth finger—the "little finger"—a scheduled injury that requires twenty weeks of compensation. *Id.* § 85.34(2)(e). If an employee lost both little fingers—in a single accident or otherwise[1]—the employee would be compensated for each little finger under paragraph (e). *Id.* In other words, there would be two scheduled injuries. There would not be an unscheduled injury. Because little fingers are "described or referred to" in the schedule composed of "paragraphs 'a' through 'u,'" the worker who lost both little fingers would not fall into paragraph (v). *Id.* § 85.34(2).

*Id.*, 2024 WL 1334165, at *5. In other words, "[b]ecause [shoulders] are described or referred to in the schedule composed of paragraphs a through u, [Carmer,] who lost both [shoulders,] would not fall into paragraph (v)." *Id.* (cleaned up). Carmer's injuries "are scheduled, not unscheduled."[2] *Id.*, 2024 WL 1334165, at *4.

## V.    Disposition

The district court was correct to affirm the commissioner's finding Carmer's left shoulder injury is compensable. We affirm that ruling of the district court.

The district court erred in affirming the commissioner's finding Carmer's shoulder injuries should be compensated as unscheduled injuries. We reverse that ruling of the district court.

"Because we conclude that the commissioner erred in treating [Carmer]'s injuries as unscheduled, we also conclude that the commissioner erred in awarding compensation based on [Carmer]'s loss of earning capacity. Likewise, the district court erred in affirming the award of compensation." *Id.*, 2024 WL 1334165, at *7.

---

[1] Similarly, here, Carmer's injuries were not "caused by a single accident," but the exclusion of "both shoulders" from paragraph (t) is irrelevant. Iowa Code § 85.34(2)(t).

[2] On appeal, Nordstrom also claims the commissioner erred in "using Dr. Segal's [impairment] rating for the shoulders." In light of our conclusion above, we need not reach this claim.

We therefore reverse that ruling of the district court. We remand to the district court for entry of an order remanding to the commissioner for further proceedings to determine compensation for Carmer's scheduled injuries. *Id.*

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**